### JAMES W. EVANS ET AL. v. JOHN E. M. OPPERMAN.
#### No. 2813.

1. **Cause of Action.**—Complaint was that the defendants had collected the whole of certain insurance policies, and that the plaintiff is entitled to an equal share with the several defendants. *Held,* that if plaintiff was entitled to it the insurance compa-nies still owe it, and it seems that a demurrer should have been sustained to the peti-tion.

2. **Gift to Wife of Community Property.**—It is well settled that the husband may make a gift to the wife of the community property so as to make it her separate estate.

3. **Insurance on Husband's Life for Wife.**—It is evident that when a husband insures his life and makes the policy payable to his wife his intention is that the policy should enure to her separate use and benefit.

4. **Will, Construction of.**—By the following clause in a will by the wife no in-terest in her separate property passed: "I give and bequeath to my said husband all my interest in the community property acquired by us during our marriage, trusting to him to make proper provision for our children." This did not pass the right to an insurance policy in her name which had been procured by the husband.

5. **Construction of Insurance Policy.**—In an insurance policy the words "pay-able to Mary A. Opperman, her executors, administrators, and assigns," are descriptive of the estate taken by the beneficiary under the policy, and show that she took an ab-solute title to it.

6. **Posthumous Child, Rights of.**—Where legatees under a will have received the property devised the rights of a posthumous child in the estate of the testator is against the legatees for his proportion of his father's estate as if no will had been exe-cuted. Rev. Stats., art. 4867.

7. **Same—Judgment for His Share.**—Judgment in such suit should be rend-ered against each legatee separately, not jointly, and where money has been parti-tioned and part thereof is recovered interest on the recovery should be allowed.

8. **"Their Children" — Construction.** — Policies of insurance obtained by the husband upon his life payable to the wife, and in event of her death before her hus-band then to *their children. Held,* that by *their children* was meant the children of both. The child of the husband in a second marriage took nothing.

APPEAL from Galveston. Tried below before Hon. Wm. H. Stewart. The opinion states the case.

*McManus & Wilson,* for appellants. —1. The insurance companies were the obligors in the contracts forming the basis of this suit. They were

debtors to the beneficiaries named or designated in the policies for the amount expressed in them.   They could only be discharged from their obligations by payment to the proper parties, or by the judgment of a competent tribunal.   No payments made by them to other parties, under any pretext whatever, could shift their liability to such other parties, except by the express consent of the original beneficiaries designated in the contracts, whose vested rights would be affected by such shifting or change of liability.   Neither the courts nor the Legislature has any power to so alter the parties to contracts, or to impair their obligation.   The original promissor continues the debtor of the original promisee until discharged by payment or due process of law.   Bank v. Rice, 107 Mass., 37, citing Metc. on Con., 209; Add. on Con., 6 ed., 630, 1041; Chitty on Con., 8 ed., 53.

2.   Where a man obtains a policy of insurance on his life in favor of his wife, and in the event of her death before his, in favor of their children, the interest of the wife is merely a life interest, which terminates at her death if she die before her husband, and she can not assign or transfer her interest by will so as to defeat the rights of their children. Where any other person is named or designated in like manner as an alternate beneficiary, such as her executor or administrator, the policy or the proceeds of it belong immediately to such named successor in the beneficial interest, either for his own use or in trust for the heirs of his testatrix, not by virtue of her will, but by virtue of the express terms of the policy itself.   It forms no part of the estate of either wife or husband.   Mullins v. Thompson, 51 Texas, 7; Splawn v. Chew, 60 Texas, 532; Bliss on Ins., sec. 318; Keller v. Gaylor, 40 Conn., 343; Chapin v. Fellows, 36 Conn., 132; Crittenden v. Life Ins. Co., 41 Mich., 442; Life Ins. Co. v. Burroughs, 34 Conn., 305; Ruppert v. Ins. Co., 7 Rob., 155; Cragin v. Cragin, 66 Me., 517; Life Ins. Co. v. Palmer, 42 Conn., 60; Hutson v. Merrifield, 51 Ind., 24; Hilliard v. Ins. Co., 6 Vroom, 415; Martin v. Ins. Co., 9 Vroom, 140; Gosling v. Caldwell, 1 Lea, 454; Robinson v. Duval, 79 Ky.; Glanz v. Gloecker, 104 Ill., 573; Eadie v. Slimmon, 26 N. Y., 9; Ricker v. Life Ins. Co., 27 Minn., 193; Harley v. Heist, 86 Ind., 196; Pence v. Makepeace, 65 Ind., 345; Wilburn v. Wilburn, 83 Ind., 55.

Had the policy been made payable to Mary A. Opperman solely, she could have assigned it by will.   Even when an alternate beneficiary had been designated, she could, during her life, assign her contingent interest in it, which would become absolute in case of her husband's death before her own.   But where, as in the present case, the policy expressly provides for the contingency of her death before that of her husband, by naming in that event an alternate beneficiary, her personal interest ends with her life.   It then becomes at once and absolutely payable at the contract time of payment to her executor or administrator, even to the ex-

clusion of her heirs, for whose benefit it was intended. This doctrine, which is in accord with the decisions of this court, has been maintained in numerous cases. In Bailey v. New England Life Insurance Company, 114 Massachusetts, 177, also reported in 19 American Reporter, 329, this view is maintained, and numerous decisions to like effect are presented in a note, page 331.

The case is one of first impression in this court, and so far as we have been able to discover in any court in the world, presenting the novel facts of the infant child of a second wife claiming a share in what would have been, if she had survived her husband, the separate property of the first wife (to whom plaintiff was in no way related), but which, by the event of her death while that property was still a mere expectancy, passed by the express terms of the contract itself to her administrator, in trust for the benefit of her own children.

At the time of her death this policy could not have been paid to her husband, because he was still alive; at his death it was made expressly payable to her administrator, not to his. His estate could maintain no claim to the proceeds of a contract for the benefit of a third party which matured only on his death. It formed no part of Mary A. Opperman's estate at the time of her death, because that event vested it in another designated beneficiary. It could not be passed by her will even if she had so desired and declared, and never formed part of the estate of her husband.

3. The language of the will of Mary A. Opperman, "Wishing that my husband may enjoy the property which he has acquired during our marriage, and also that which he has out of affection for me donated to me by deed, * * * I give and bequeath to my said husband the seven lots on which we now live, * * * the dwelling house and all other improvements on said seven lots; * * * also all the personal property belonging to me, by gift from him or otherwise, in said dwelling house," will not pass her interest in insurance policies or other choses in action. Peaselee v. Fletcher's Estate, 60 Vt., 188; German v. German, 27 Pa. St., 116; Benton v. Benton, 56 Am. Rep., 512.

4. The finding of the District Court, that "the will of Mrs. Mary A. Opperman to her husband Gustavus Opperman vested the title of that policy in him, and it became assets of his estate and passed under his will to his children by his first wife and to the posthumous child of his last wife, share and share alike," does not conform to the pleadings, is unsupported by any allegation in the petition, and unauthorized by law. Wallace v. Bogel, 62 Texas, 636; Lemmon v. Hanley, 28 Texas, 219; Chrisman v. Miller, 15 Texas, 161; Hall v. Jackson, 3 Texas, 305.

*Wheeler & Rhodes* and *Donaldson & Minor*, for appellee. — 1. The insurance companies and the defendants, being engaged in committing the same trespass, were joint and several trespassers, and, as in case of a joint

and several contract, the plaintiff had the right to sue defendants for the conversion of his interest in the policies and their proceeds without previously or at the same time suing the insurance companies, and the defendants can not plead, either in abatement or in bar, the failure of plaintiff to sue the insurance companies.   Lovejoy v. Murray, 3 Wall., 11; Cool. on Torts., pp. 133, 134, and authorities.

2.   If the plaintiff's petition did not sufficiently aver that the policy for $5000 passed to Gustave Opperman by the will of Mary A. Opperman, such defect was cured by the allegation in defendants' statement in writing in respect to their plea in abatement, to the effect that by such will she bequeathed all her estate, real and personal, to her husband Gustave Opperman.   Grimes v. Hagood, 19 Texas, 249; McFarland v. Mooring, 56 Texas, 118; Nesbitt v. Richardson, 14 Texas, 658; Andrews v. Hoxie, 5 Texas, 171; Hill v. George, 5 Texas, 87; Gould on Plead., ch. 3, sec. 192.

3.   The will of Mary A. Opperman vested the title to the policy for $5000 in her husband Gustave Opperman, and it became assets of his estate.   2 Red. Law of Wills, 116, 129; 1 Red. Law of Wills, 441; Gover v. Davis, 7 Jur., N. S., 399; Swinfen v. Swinfen, 29 Beav., 207; Nugee v. Chapman, 29 Beav., 290; Browne v. Cogswell, 5 Allen, 556, 559.

4.   The policy for $5000 being the joint acquisition of Gustave Opperman and his wife Mary A., by onerous title, during their marriage, and not having been shown by the defendants to be her separate estate, the burden of proving which fact rested upon them, and she having died before Gustave Opperman, her will bequeathing to him all her interest in their community property vested the title to all of that policy in him, and it became assets of his estate.   Rev. Stats., arts. 2852, 2853; Welborn v. O. F. B. & E. Co., 56 Texas, 501; Zorn v. Tarver, 45 Texas, 521; Epperson v. Jones, 65 Texas, 427; Bradshaw v. Mayfield, 18 Texas, 21; Kendrick v. Taylor, 27 Texas, 695; Houston v. Curl, 8 Texas, 240; Parker v. Chance, 11 Texas, 515; Claiborne v. Tanner, 18 Texas, 78; Mitchell v. Marr, 26 Texas, 331; Veramendi v. Hutchins, 48 Texas, 550; McDaniel v. Weiss, 53 Texas, 259; Heidenheimer v. McKeen, 63 Texas, 229; Dixon v. Sanderson, 72 Texas, 362; Smith v. Bailey, 66 Texas, 554.

5.   The fact that Mary A. Opperman bequeathed all her estate, real and personal, to her husband Gustave Opperman having been established by the solemn judicial admission of the defendants in a written statement filed in the court below, no other evidence was required to establish that fact; and the appellants having objected in the District Court to the admission in evidence of the will of Mary A. Opperman, not on the ground that it did not pass her interest in the policy for $5000, but solely on the ground that it was irrelevant, can not in this court object to such will on the former ground; and the objection that it was irrelevant is not well taken under the averments of plaintiff's petition, and the allegations

of defendants in their written statement, that the will in question did pass all her estate to her husband. Fowler v. Davenport, 21 Texas, 632, 633; 1 Greenl. on Ev., secs. 27, 205; Ragsdale v. Robinson, 48 Texas, 397; Houston v. Perry, 5 Texas, 467; Rector v. Hudson, 20 Texas, 234; Tucker v. Willis, 24 Texas, 249; Bohannon v. Hans, 26 Texas, 450; Hill v. Baylor, 23 Texas, 261; Railway v. Adams, 63 Texas, 206; Railway v. Gage, Id., 575.

6.    The court erred in rendering judgment against each of the defendants for only one-ninth part of the sum of five hundred dollars adjudged plaintiff, in this, that the judgment should have been against the defendants jointly and severally for the full amount of the judgment in the plaintiff's favor.    Lovejoy v. Murray, 3 Wall., 11; Cool. on Torts, pp. 133, 134, and authorities.

7.    The words " their children " in the beneficiary clause of the policy for $10,000, meant the children of either Mary A. Opperman or of Gustave Opperman, and the plaintiff, the child of the second marriage, was equally entitled with the defendants, the children of the first marriage, to this policy and its proceeds.    Bliss on Life Ins., sec. 345; Stegler v. Stegler, 77 Va., 163; 1 Barb. Ch., 264; Ricker v. Life Ins. Co., 37 Minn., 193; Life Ins. Co. v. Palmer, 19 Am. Rep., 530.

GAINES, ASSOCIATE JUSTICE.—The appellants are the children of Gustave Opperman by his first wife, and appellee is his only child by his second.    During the life of his first wife, Mary A. Opperman, Gustave Opperman took out three policies of insurance upon his life, one for $10,000, one for $5000, and the third for $4520.    The first and third were made payable upon the death of the assured to his wife Mary A. Opperman, and provided that in the event that she died before her husband the money should be paid to their children.    The second policy was made payable upon the death of the assured to " Mary A. Opperman, her executors, administrators, or assigns."    Mary A. Opperman died before her husband, having made a will in which she made to him certain bequests and devises, and also bequeathed and devised to him all her interest in their community property.    Gustave Opperman then married a second time, and afterwards died, leaving a will by which he devised to his second wife certain specific property, and gave all the residue of his estate to his children by his first wife.    The appellee was born after his death. The money due upon the three policies of insurance was paid to the children of the first marriage.    This suit was brought by the child of the second marriage against his half-brothers and sisters, claiming an equal interest with them in each of the policies of insurance, and seeking to recover that interest.

There was a demurrer interposed to the petition and it was overruled by the court.    This action of the court presents a question we have found

it difficult to determine. From the face of the petition it would seem that the ground of complaint is that the defendants had collected the whole of the insurance money, and that the plaintiff is entitled to an equal share, namely, one-tenth of it. Admitting all this to be true, it is not clear that any money has been due to the plaintiff. If he was entitled to a part of the money, the insurance companies still owe it to him, and the action of the defendants have not deprived him of any right. If they had held the legal title to the money, and he had owned a beneficial interest in it, his right to sue them would have been clear. But in the absence of any fiduciary relation or any privity of contract between the parties, and of the deprivation of any right which he had, it is difficult to see that he has a cause of action against them according to the facts stated in the petition. It is alleged that they converted the policies and the money due thereon to their own use. This means, we presume, that they collected the money, and may be intended to mean that they delivered the policies to the companies that issued them. If the right of the parties had been to a specific fund or sum of money, and the defendants had appropriated the whole, the plaintiff being entitled to a part, he would have had a right of action against them. But the claim here was merely for debts owed by the insurance companies. We have examined many cases in which suits were brought for money had and received, and have found none that would warrant this action. Whether the conversion of the evidence of debt by one or more creditors will give a right of action to another creditor having a common interest in a chose in action we need not determine. We are of opinion that under the facts disclosed by the testimony the plaintiff has a right of action for a part of the money which he claims; and since we have determined to reverse the case upon another ground, he will have the opportunity to amend his petition so at least as to obviate the present difficulty.

We deem it necessary to determine but one question presented by appellant's assignments of error. The decision of that question, in our opinion, requires a reversal of the judgment, and so far as we can now see will be a sufficient guide to enable the court below to make a correct disposition of the cause upon a new trial. The court held that by the will of Mary A. Opperman the title to the $5000 policy passed to her husband, and that upon his death the money accruing thereon belonged to his children, each taking an equal share. So much of that will as relates to this question is as follows:

"I, Mary Ann Opperman, wife of Gustave Opperman, of Galveston, being of lawful age and of sound mind and memory, wishing that my husband may enjoy the property which he has acquired during our marriage, and also that which he has out of affection for me donated to me by deed, do make, ordain, and publish this my last will and testament.

"Item first. I give and bequeath unto my said husband Gustavus Op-

perman the seven lots on which we now live, being lots one (1) to seven (7), both inclusive, in block 552, in the city of Galveston, the dwelling house and all other improvements on said seven lots; also all the personal property belonging to me, by gift from him or otherwise, in said dwelling house and in all other buildings on said lots; also I give and bequeath to my said husband" certain other real estate; "and also I give and bequeath to my said husband all my interest in the community property acquired by us during our marriage, trusting to him to make proper provision for our children."

We think it clear that the right of the testatrix to the policy did not pass by that clause which bequeathed to her husband all the personal property in the dwelling house and other buildings on the lots devised. That in our opinion was intended to embrace only tangible property, and probably applied mainly to the household and kitchen furniture and other articles used in connection with the residence for the comfort of the family. Did, then, the title to the policy of insurance pass by the bequest of the interest of the testatrix in the community property? If the policy was the common property of the husband and wife it did, but if it was the separate property of the wife it did not.

It is well settled that the husband may make a gift to the wife of the community property, so as to make it her separate estate. Story v. Marshall, 24 Texas, 305; Reynolds v. Lansford, 16 Texas, 286; Smith v. Boquet, 27 Texas, 507. In the case first cited, in speaking of deed from the husband to the wife, Judge Wheeler says: "In the absence of any evidence of intention outside of the deed, it must be taken as evidencing the intention which upon its face it imports—that is, to convey to the wife the interest of the husband in the property. * * * To deny it that effect would be to render the whole deed inoperative and void." We think it equally manifest that when a husband insures his life and makes the policy payable to his wife, his intention is that the policy shall enure to her separate use and benefit. By the terms of the contract the money is not payable until the husband is dead and the marital relation has been dissolved. It is clear that the policy in question was the separate property of Mrs. Mary A. Opperman, and that it did not pass to the husband by that clause in her will which conveyed to him her interest in their community estate. The mention in the will of certain parcels of separate property, and of her interest in all the community property, excludes the idea that any separate property not mentioned was intended to be conveyed. The recitals in the will tend to show that it was the intention of the testatrix to devise and bequeath to her husband all her property which she had acquired through him. But we understand the rule to be that when the construction is doubtful, the reasons given for a devise may be looked to in order to solve the doubt, but that when the meaning of the language of the devise is clear, it can not be controlled by the reason assigned for making it.

It has been held that the reason "can not warrant the rejection of words that are clear" (1 Jarm. on Wills, 483); and the same principle precludes us from adding to a bequest property not embraced by unambiguous words of description, although the reason assigned for making the will may indicate that it was the intention that such property should be included. On the other hand, counsel for appellants go to the length of insisting that Mrs. Opperman took only a life estate in the policy, and that she had no power to convey it by will. We do not concur in that construction. The case cited by them does not support their position. Bailey v. Ins. Co., 114 Mass., 177; S. C., 19 Am. Rep., 329. It is there merely held that a policy payable to the executor or administrator of the assured for the benefit of his wife must be sued upon by such legal representatives. The words "her executors, administrator, or assigns" in the policy under consideration are, as we think, descriptive of the estate taken by the beneficiary under the policy, and show that she took an absolute title to it.

The court below held that upon the death of Mrs. Opperman the title to the policy passed to her husband, and that upon his death the money due upon it belonged to his children in equal portions, and having found that the children of the first marriage had received the whole, gave judgment in favor of appellee, the child of the second wife, against each of them for one-tenth of the sum so received by each. This we think was error.

It does not follow, however, that upon the facts proved the appellee was not entitled to recover something. Upon the death of the first wife the policy descended to her heirs—that is to say, one-third descended to her husband and the other two-thirds to her nine children, who are the appellants here. Rev. Stats., art. 1646. The husband made a will, in which he made certain devises and bequests to his second wife, and devised and bequeathed the residue of his estate to his children by his first wife. The appellee, as his posthumous child, became entitled to such interest in his father's estate as he would have taken had no will been made. Rev. Stats., art. 4867. The testimony showed upon the trial that administration was taken out upon the estate of Mrs. Mary A Opperman, the first wife, and that the administrator collected the money due upon the policy and paid it to his children. The evidence wholly fails to support the allegation of the petition that appellants converted the policy. They received what they were entitled to receive according to the letter of their father's will. Under the statute above cited appellee succeeded to the portion of his father's estate he would have received had the father died intestate, and to raise this portion all the devisees and legatees were required to contribute proportionably out of the parts devised and bequeathed to them by the will. Rev. Stats., art. 4867. The rights of the appellee in the policy of insurance under consideration grew out of the

statute referred to, and must be enforced according to its provisions. What they may be as against appellants must depend greatly upon the partition and distribution that has been made of the other property belonging to his father's estate. If he has received his share of the remainder of the estate, and if each devisee has contributed his proportion to make up that share, and if the policy in question has not been accounted for in the settlement, should not his mother as a devisee contribute towards making up the amount due him out of this fund? But not knowing what has been done with reference to the other property of the estate, it is needless to speculate upon such conjectures as may suggest themselves. Having shown that the uncontroverted evidence in the case discloses that his father had but a third interest in the policy for $5000, it is apparent that the judgment is excessive and must be reversed. His remedy is to so amend his petition as to make it an action to recover against the legatees under his father's will the interest which the statute gives him as a posthumous child.

The appellee has filed cross-assignments of error, which we shall now proceed to consider. He complains that the court should have allowed interest on the amount adjudged to him from the time the appellants received the money on the policy. With reference to this, we deem it sufficient to say that if, upon another trial, appellee should be found entitled to recover any part of the money received by appellants on the policy, he should also recover interest from time it was so received.

Whatever judgment is rendered should be against each of appellants separately for the part of the money wrongfully received by him, and not against all jointly for the whole.

Appellee further insists that the court erred in holding that he was entitled to no part of the money received by appellants on the policies for $10,000 and $4520 respectively. As before stated, these policies were payable to Mary A. Opperman, the wife of the assured, and in the event she died before her husband, then to "their children." It is contended that "their children" meant not only the children common both to the insured and to his wife, but also the children of either of them, and that therefore appellee was included. We do not assent to the proposition. It may be that by an inaccurate use of the words they may be sometimes employed in the sense contended for by appellee, and that under peculiar circumstances, as in the case of Stegler v. Stegler, 77 Virginia, 163, to which counsel refer, they were properly construed to have that meaning. We think, however, the obvious and more accurate meaning of the term is the children of both the persons referred to. They could not have been intended to include any other children of the wife, because she could only have married again after the death of the husband, and after the policy had become her absolute property. If the husband had intended to embrace any child or children he may have had by a second wife, his mean-

ing would have been clearly and accurately conveyed by providing that if his wife died first the policy should be payable to his children. By the use of the term "their children" we think was meant the children common to both husband and wife, and that under the two policies now under consideration appellee was entitled to take nothing.

For the error of the court in giving judgment against the appellants under the petition and evidence, and because the judgment in any event is too large, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Delivered February 25, 1890.