Gibb H. AMASON, Plaintiff-Appellant,

v.

The FRANKLIN LIFE INSURANCE
COMPANY, Defendant,

Beulah L. T. Forbes, Defendant-Appellee.

No. 28455.

United States Court of Appeals,
Fifth Circuit.

June 25, 1970.

J. Paul Lowery, Bishop N. Barron,
Montgomery, Ala., for appellant.

Walter R. Byars, Montgomery, Ala.,
for appellee.

Before COLEMAN, GOLDBERG and
MORGAN, Circuit Judges.

GOLDBERG, Circuit Judge:

Once upon a time there was genuine doubt concerning the proper characterization of the community interest of a Texas spouse in life insurance policies purchased with community funds. Today this is an old wives' tale. Consequently, we have little difficulty in resolving this controversy over the proceeds of a life insurance policy.

The history of this litigation began in 1964 when Byron H. Forbes and his wife Beulah Forbes, both Texas domiciliaries, purchased a life insurance policy on Mr. Forbes' life. Mrs. Forbes was designated as the primary beneficiary, but under the terms of the policy Mr. Forbes retained the right to change the beneficiary. The policy premiums were paid out of community property funds until June, 1968, when Mr. and Mrs. Forbes were divorced. After the divorce Mr. Forbes moved to Alabama, and in July, 1968, he changed the designated beneficiary of the policy, naming his brother-in-law, Gibb H. Amason. Within a matter of days after this change was executed Mr. Forbes died.

Following Mr. Forbes' death both Amason and Mrs. Forbes filed claims with the insurance company seeking the policy proceeds. After various legal maneuvers not relevant here the insurance company paid the proceeds into the registry of the court and was discharged as a defendant, leaving Amason and Mrs. Forbes to settle the distribution of the proceeds. Amason claimed the entire amount of the proceeds as the designated beneficiary, while Mrs. Forbes claimed one-half of the fund under the Texas community property laws. The trial court awarded one-half of the proceeds to each claimant. Agreeing with that determination, we affirm.

The parties have stipulated, and we agree, that the law of Texas controls the respective rights of the parties in this case. Looking to the Texas law we find that the courts of that state have repeatedly dealt with the problem of the application of the Texas community property law to life insurance policies and their proceeds. We therefore are in the happy position of having rather clear authority concerning the proper disposition of the issues in this case.

For many years Texas had what can only be described as an unfathomable morass of conflicting decisions concerning the nature of the proceeds of insurance policies purchased during coverture with community funds.[1] This confusion reached its zenith in 1956 when the Texas Supreme Court in Warthan v. Haynes, 1956, 155 Tex. 413, 288 S.W.2d 481 declared that a wife prior to her husband's death had no community property interest in the proceeds of a policy on her husband's life purchased with community funds. The opinion in *Warthan* seemed to be premised on the rationale that the proceeds of a life insurance police were not property prior to the death of the insured and therefore could not be community property.

The legislative response was swift and sure. Declaring that the supreme court's opinion in *Warthan* created an emergency,[2] the legislature amended Tex.Rev. Civ.Stat.Ann. art. 23(1) to read as follows:

"'Property' includes real and personal property, *and life insurance pol-*

1. For a full discussion of the conflicting Texas decisions see the dissenting opinion of Justice Garwood in Warthan v. Haynes, 1956, 155 Tex. 413, 288 S.W.2d 481, 486.

2. Section 2 of the amending act read as follows:
   "Sec. 2. The fact that the case of Warthan v. Haynes, 288 S.W.(2d) 481, decided by the Supreme Court of the State of Texas, casts some doubt on the status of life insurance policies as property creates an emergency and an imperative public necessity that the Constitutional Rule requiring bills to be read on three several days in each House of the Legislature be suspended, and said Rule is hereby suspended, and this Act shall take effect and be in force from and after its passage, and it is so enacted."
   Tex.Laws, Regular Session 1957, ch. 404, § 2, at 1228.

*icies and the effects thereof."* (Emphasis added.)

The judicial response to this legislation was equally clear. In Brown v. Lee, Tex. 1963, 371 S.W.2d 694, 696, the Texas Supreme Court expressly recognized the effect of the 1957 amendment:

"The legal theory of title to insurance proceeds heretofore followed by this Court and most recently reviewed in the majority opinion of Warthan v. Haynes, 155 Tex. 413, 288 S.W.2d 481 (1956) appears to have been altered by a recent legislative amendment. A 1957 amendment to article 23(1), Vernon's Ann.Civ.Stat., enlarged the statutory definition of 'property' so that it now includes 'insurance policies and the effects thereof.' The legislature has thus aligned Texas with other community property states in adhering to the theory that the right to receive insurance proceeds payable at a future but uncertain date is 'property.' Such property is said to be in the nature of a chose in action which matures at the death of the insured." 371 S.W.2d at 696 (footnote omitted).

The court went on to explain the effect of the amendment on the property rights of a spouse in an unmatured insurance policy purchased with community funds:

"When purchased with community funds, the ownership of the unmatured chose logically belongs to the community, unless it has been irrevocably given away under the terms of the policy, i.e., where the purchaser has, without fraud, foreclosed any right to change the named beneficiary as in Evans v. Opperman, 76 Tex. 293, 13 S.W. 312 (1890). The proceeds at maturity are likewise community in character, except where the named beneficiary is in fact surviving, in which case a gift of the policy rights to such beneficiary is presumed to have been intended and completed by the death of the insured." *Id.*

■ Whatever ambivalences or incongruities there might have been prior to 1957, as to whether or not particular property rights existed in a life insurance policy, there is no lingering or contemporary doubt. Today it is clear that in Texas a spouse has a community property interest in an unmatured insurance policy purchased with community property funds and further that this ownership interest extends both to the policy itself and to the future right to receive the proceeds.

In our case Mr. and Mrs. Forbes purchased the insurance policy during coverture with community property funds. The right to receive the insurance proceeds payable at a future date was thus without question community property. We have no doubt, therefore, that up until the moment of divorce Mrs. Forbes owned a community property interest in the future right to receive the insurance proceeds, not because she was the named beneficiary at that time, but because she owned outright as her community share an undivided one-half interest in the policy and the future right to the proceeds of that policy.

■■ Amason argues, however, that upon divorce Mrs. Forbes had no further interest in her former husband's property and therefore she had no further interest in the insurance policy or its proceeds. We disagree. Even if it be true that under Texas law Mrs. Forbes had no further interest in her husband's property after divorce, that alleged rule furnishes no guidance for the disposition of the present case. The insurance policy involved here was *not* the property of Mr. Forbes. It was the community property of Mr. and Mrs. Forbes. Although Mr. Forbes was listed as the owner on the policy and by contract retained the right to change the beneficiary, these contract rights cannot change the true ownership of the policy. Since the policy was community property, each spouse owned an undivided one-half interest in the policy and the future right

to receive its proceeds. Brown v. Lee *supra.*

■■ The divorce did not automatically divest either spouse of his or her interest in the policy. On the contrary, Texas law provides that if the divorce court does not order a division of community property, then after divorce each spouse owns an undivided one-half interest in that property as a tenant in common in the same fashion as if they had never been married. Ex parte Williams, 1960, 160 Tex. 314, 330 S.W.2d 605; Taylor v. Catalon, 1942, 140 Tex. 38, 166 S.W.2d 102; Dillard v. Dillard, Tex.Civ.App. 1961, 341 S.W.2d 668, writ ref'd n.r.e.; Newsome v. St. Paul Mercury Ins. Co., Tex.Civ.App. 1960, 331 S.W.2d 497. The trial court found—and the evidence supports this finding—that Mr. and Mrs. Forbes did not have a property settlement agreement concerning the insurance policy and that no disposition of the policy was made by the divorce court. After the divorce, therefore, Mr. and Mrs. Forbes each owned as a tenant in common one-half of the insurance policy and one-half of the right to receive the proceeds of that policy.

■ The remaining question is whether or not after the divorce Mr. Forbes could divest Mrs. Forbes of her one-half interest in the policy proceeds by executing a change of beneficiary form. In other words, may a tenant in common holding all indicia of ownership over a commonly held piece of property legally give away the property interest of his co-tenants? Texas law clearly countenances no such result. The rule in that state is that a conveyance by a tenant

in common purporting to convey the entire property interest conveys only the interest possessed by the grantor and is ineffective as a conveyance of the interest owned by a non-joining co-tenant. Thomas v. Southwestern Settlement and Development Co., 1939, 132 Tex. 413, 123 S.W.2d 290; Home Owners' Loan Corp. v. Cilley, Tex.Civ.App.1939, 125 S.W.2d 313, writ ref'd.

In Blanton v. Austin, Tex.Civ.App. 1965, 392 S.W.2d 140, a Texas court faced a factual situation almost identical to the one which we encounter in the present case. There a husband and wife acquired a stock certificate issued in the husband's name representing 50,000 shares of stock which they owned as community property. Upon divorce the court made no disposition of this property and the certificate remained in the husband's possession. The stock was sold at an execution sale to one of the husband's creditors. The husband sued the purchaser to set aside the sale and in partial settlement of the suit agreed to sell the certificate to the creditor for an increased amount. The wife, however, intervened in the suit asserting a right to one-half of the stock represented by the certificate. The court awarded the wife one-half of the stock, leaving the husband's vendee with the other half. The basis of the decision was that the wife after divorce owned one-half of the stock, and the husband could not sell her interest even though the stock was in his name.[3]

■ Similarly in the present case Amason's grantor, Mr. Forbes, owned only an undivided one-half interest in the right to receive the insurance pro-

---

3. Under the provisions of the Uniform Stock Transfer Act then in effect, the sale would have cut off the wife's rights if it had been to a purchaser for value in good faith without knowledge of any facts making the transfer wrongful. The court held, however, that the buyer was not a purchaser in good faith and could therefore acquire only the interest owned by the husband because he knew the parties were married at the time they acquired the certificate. This knowledge, the court found, put the purchaser on notice as to the wife's claim.

In the instant case we need not decide whether a bona fide purchaser of the insurance proceeds would be entitled to protections similar to those provided in the Uniform Stock Transfer Act because it is clear that Amason did not purchase the right to receive the insurance proceeds— it was a gift. Moreover, he certainly had as much notice concerning the marital interests of Mrs. Forbes as did the purchaser in *Blanton.* Hence even if Amason had been a purchaser, he could not, under the *Blanton* rule, have acquired Mrs. Forbes' interest in the insurance proceeds.

ceeds. His designation of Amason as the primary beneficiary was therefore effective only as to that one-half and could not affect the other one-half interest owned by his tenant in common, Mrs. Forbes. We conclude, therefore, that at the time of Mr. Forbes' death Mrs. Forbes owned one-half of the insurance policy and was entitled to one-half of the proceeds of the policy.

Amason has argued, however, that it would be inequitable to allow an ex-wife to recover one-half of the proceeds of an insurance policy on her husband's life because the husband might have continued to pay the premiums out of his separate property for many years after the divorce. We disagree. The inequity, if any occurs, can easily be corrected by whatever right of reimbursement exists in this situation between tenants in common under state law. Since the reimbursement would go to Mr. Forbes' estate, rather than to a beneficiary, and since the estate is not a party to this suit, we do not decide whether under the facts of this case the estate of Mr. Forbes is entitled to reimbursement.

The judgment of the district court is affirmed.