**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**July 11, 2005**

**Charles R. Fulbruge III**
**Clerk**

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 03-60855

_____

Estate of JOHN L. BAIRD, Deceased,
Ellen B. Kirkland and J. Samuel
Baird, Co-Executors,

Petitioner - Appellant,

versus

COMMISSIONER OF INTERNAL REVENUE,

Respondent - Appellee.

*****************************************************************

Estate of SARAH W. BAIRD, Deceased,
Ellen B. Kirkland and J. Samuel
Baird, Co-Executors,

Petitioner-Appellant,

versus

COMMISSIONER OF INTERNAL REVENUE,

Respondent - Appellee.

_____

Appeal from the Decision of the United States Tax Court

_____

Before JOLLY and DAVIS, Circuit Judges, and ENGELHARDT, District
Judge.[1]

E. GRADY JOLLY, Circuit Judge:

The Tax Court held that the taxpayers, the estates of a
deceased husband and wife, were not entitled to an award of
administrative and litigation costs because the Commissioner of

_____

[1]District Judge of the Eastern District of Louisiana, sitting
by designation.

Internal Revenue ("IRS") was substantially justified in taking the position that the only discount allowable when valuing the decedents' non-controlling fractional interests in Louisiana timberland was the cost of partitioning the property. The taxpayers appeal, contending that the IRS did not meet its burden of proving that its position was substantially justified. We conclude that the Tax Court abused its discretion by finding that the IRS's position was substantially justified. Accordingly, we REVERSE and REMAND for a determination of reasonable fees and costs.

I

John L. Baird ("Mr. Baird") died on December 18, 1994. His estate included a 14/65 undivided interest in a Louisiana trust that held 2,957 acres of timberland in 16 noncontiguous tracts in Sabine Parish, Louisiana, ranging in size from one-half acre to 1,092 acres.[2] Mr. Baird's widow, Sarah W. Baird ("Mrs. Baird"), died less than a year later, on November 2, 1995. Her estate included a 17/65 interest in the same trust.

Mr. Baird's estate filed its initial estate tax return on March 18, 1996. His estate claimed a 25% fractionalization

---

[2]The parties stipulated the fair market value of the undivided fee interest in the 16 tracts at the date of Mr. Baird's death and at the date of Mrs. Baird's death. The sole issue before the Tax Court was the amount of discount to be applied because their interests in the property were non-controlling, fractional interests.

discount from the pro rata fair market value of his 14/65 interest in the 16 tracts held by the trust.[3]

Mrs. Baird's estate filed its initial estate tax return on January 31, 1997. Her estate claimed a 50% fractionalization discount from the pro rata fair market value of her 17/65 interest in the 16 tracts held by the trust. On February 24, 1997, Mr. Baird's estate filed an amended estate tax return, and a claim for a refund, using a 50% fractionalization discount for the 16 tracts.

The IRS issued notices of proposed adjustments on June 26, 1998, rejecting the estates' claimed fractionalization discounts, and setting forth the agency's position that the only discount should be the estimated costs of a hypothetical partition in kind. That position was based on the report of an IRS forester, Robert

---

[3]The standard for valuation of property in an estate is fair market value, which is defined as "the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts." United States v. Cartwright, 411 U.S. 546, 551 (1973). The standard is objective, using a hypothetical willing buyer and seller, each of whom would seek to maximize economic return. Estate of Jameson v. Commissioner, 267 F.3d 366, 372 (5th Cir. 2001). Thus, the hypothetical "willing seller" is not the estate itself. Estate of Bonner v. United States, 84 F.3d 196, 198 (5th Cir. 1996).

A fractionalization discount accounts for the fact that the sum of all fractional interests in property is worth less than the whole. It also takes into account the restrictions on sale or transfer of the property when more than one person or entity holds undivided fractional interests in the property. "Potential costs and fees associated with partition or other legal controversies among owners, and a limited market for fractional interests and lack of control, are all considerations rationally related to the value of an asset." Bonner, 84 F.3d at 197-98.

3

Baker.  A copy of his report was attached to the notices of proposed adjustments.

Concluding that there were no reliable market comparable sales, Baker's explanation for his opinion, relating to Mr. Baird's estate, is as follows:

> Using the recommended full interest value for the 2,957 acres of $4,685,331, a discount can be determined using a cost of a revised timber inventory, surveying the property into equal valued "lots" and legal costs associated with the partition of the property.  Dividing the property into 40 acre "lots", or variations thereof, and an estimated $1,000 per survey mile results in survey cost[s] of $49,250.  A revised timber inventory would cost $8,871.  Legal cost, as recommended by the Estate Agent, would approximate $100,000.  The total cost of partition would approximate $158,121.  Louisiana law cites all partition cost[s] are borne in the pro-rata share of ownership.  Subtracting the partition cost of $158,121 from the recommended value of $4,685,331, results in an after cost value of $4,527,210.  Mr. John Baird owned a 14/65th interest in the property or a total recommended estate value [of] $975,091.

Baker made similar calculations for Mrs. Baird's 17/65 interest. The estimated costs were equivalent to discounts of 3.37% for Mr. Baird's estate and 3.11% for Mrs. Baird's estate.

In August 1998, the estates filed protest letters in response to the notices of proposed adjustments.  Attached to the protest letters were expert reports responding to Baker's analysis, criticizing Baker's use of transactions involving sales of controlling interests, and explaining the risks and difficulties involved with partitioning the 16 tracts.  The protest letters

4

stated that, under the circumstances, any attempt to partition the 16 tracts would be vigorously resisted by the remaining co-owners.

The parties attended an Appeals Conference in Shreveport, Louisiana, on October 20, 1998. At that conference, counsel for the estates offered to settle for a 45% fractionalization discount. That offer was not accepted.[4]

On February 24, 1999, the co-executors sent a letter to the IRS Appeals Office repeating their offer to settle for a 45% fractionalization discount. The letter stated that the offer would remain open only until March 17, 1999, the day before the expiration of the three-year limitation period for filing a notice of deficiency. The IRS did not respond to this letter.

The IRS issued notices of deficiency on March 4, 1999. In the notices of deficiency, the agency took the same position -- that the only discount from fair market value should be the cost of partitioning the property, based on Baker's report. The notices of deficiency sought to collect additional tax from each estate based on valuation of the tracts at the exact amounts set forth in Baker's report.

---

[4]At oral argument, counsel for both parties referred to a purported statement by the Appeals Officer at the Appeals Conference to the effect that he would try to obtain approval to extend an offer to settle for a 20% discount. The Estates' brief filed in this court states, at page 17, without record citation, that the Appeals Officer offered to settle for a 20% discount. We have been unable to find any evidence in the record that the IRS actually made an offer to settle for a 20% discount.

On March 18, 1999, Mr. Baird's estate filed a second claim for refund based on increasing the fractionalization discount from 50 to 60%. Mrs. Baird's estate filed a claim for a refund on May 11, 1999, based on increasing the fractionalization discount from 50 to 60%.

On May 10, 1999, both estates filed in the Tax Court petitions for redetermination of deficiencies. In its answers to the petitions, the IRS asserted the same position it had asserted in the notices of deficiency: that the only discount allowable was the estimated cost of a hypothetical partition in kind, as calculated in the Baker report.

An IRS Appeals Officer attempted to arrange another Appeals Conference in Houston to discuss settlement of the valuation issue, but the estates refused to authorize their counsel to attend unless the IRS would first agree to a minimum fractionalization discount of 45%. The IRS would not agree, and so the conference did not take place. On the eve of trial, the IRS offered to discuss settlement with counsel for the estates. According to the Tax Court's opinion, that discussion was futile because counsel for the estates demanded a 70% fractionalization discount.

On April 13, 2000, a little over a month prior to trial, the estates served on the IRS the expert witness reports of James A. Young, Lewis C. Peters, and James C. Steele, III. All of these reports contain a discussion of the costs, time, and risks involved in a partition proceeding. Attached as an appendix to Peters's

6

report is a report prepared by Edward Benjamin, a Louisiana attorney, setting forth his opinion on the time, costs, and other difficulties in obtaining a partition of property in Louisiana. Another appendix to Peters's report states that recently the IRS had issued a Technical Advice Memorandum that stated a new position by the IRS with respect to discounts for undivided ownership interests in real estate: A discount for an undivided interest will be limited to the petitioner's pro-rata share of the estimated cost of a partition of the property. Peters states that, in arriving at this conclusion, the IRS was either unaware of or ignored a significant body of data suggesting that the discounts for undivided interests should be significantly higher than the pro rata share of the estimated cost of partition.

At trial, the estates presented one fact witness and three expert witnesses. The IRS offered Francis X. Burns as an expert witness, but the Tax Court ruled that he was incompetent to testify as an expert. Baker was listed as a witness for the IRS in its trial memorandum and he prepared an expert witness report, but he did not testify at trial and his report was not offered into evidence at trial.

The Tax Court held that the estates had established 55% as the average amount by which non-controlling fractional interests in Louisiana timberland are discounted, and that an additional 5% discount was appropriate in these cases due to peculiar

circumstances with respect to the decedents' remaining family members.

The estates moved for an award of reasonable litigation costs and administrative expenses. The Tax Court denied the motion, holding that the position taken by the IRS in the administrative and judicial proceedings was substantially justified.

## II

### A

A prevailing party in a tax case may be awarded reasonable administrative and litigation costs under 26 U.S.C. § 7430. Generally, a prevailing party is one who has substantially prevailed with respect to the amount in controversy or with respect to the most significant issue or issues. 26 U.S.C. § 7430(c)(4)(A)(i)(I) and (II). However, "[a] party shall not be treated as the prevailing party ... if the United States establishes that the position of the United States in the proceeding was substantially justified." 26 U.S.C. § 7430(c)(4)(B)(i).

The IRS has the burden of establishing that its position was substantially justified. 26 U.S.C. § 7430(c)(4)(B)(i); Maggie Management Co. v. Commissioner of Internal Revenue, 108 T.C. 430, 437-38 (1997).[5] The agency's position is substantially justified

---

[5]Prior to the effective date of the 1996 amendments, the taxpayer had the burden of proving that the government's position was not substantially justified.

if it is justified to a degree that could satisfy a reasonable person. Terrell Equipment Company, Inc. v. Commissioner of Internal Revenue, 343 F.3d 478, 482 (5th Cir. 2003) (citing Pierce v. Underwood, 487 U.S. 552, 565 (1988)). "It is not enough that a position simply possesses enough merit to avoid sanctions for frivolousness; it must have a reasonable basis both in law and fact." Lennox v. Commissioner of Internal Revenue, 998 F.2d 244, 248 (5th Cir. 1993). In the context of this case, the "position of the United States" is the position taken by the IRS in the Tax Court, and its position in the administrative proceeding is the position asserted as of the date of the notices of deficiency. See 26 U.S.C. § 7430(c)(7); Nicholson v. Commissioner of Internal Revenue Service, 60 F.3d 1020, 1027 n.11 (3d Cir. 1995). "Although we must determine the Commissioner's position as of the date of the Notice of Deficiency ..., the Commissioner's position on that date must be viewed in the context of what caused the IRS to issue the Notice of Deficiency." Cervin, 111 F.3d at 1263.

In making the determination whether the IRS has satisfied its burden of proving that its position was substantially justified, the court examines the facts and legal precedents available at the time the IRS took its position. Nalle v. Commissioner of Internal Revenue, 55 F.3d 189, 191-92 (5th Cir. 1995). The court considers all of the facts and circumstances surrounding the dispute to determine whether the IRS knew or should have known that its position was invalid. Id. "Of course, the ultimate failure of the

9

government's legal position does not necessarily mean that it was not substantially justified. It is, however, a factor to be considered." <u>Lennox</u>, 998 F.2d at 248; <u>Nalle</u>, 55 F.3d at 192 (Commissioner's loss in underlying litigation not determinative, but it is a factor). The Tax Court's decision on substantial justification is reviewed for abuse of discretion. <u>Estate of Cervin v. Commissioner</u>, 111 F.3d 1252, 1256 (5th Cir. 1997). "Thus, we reverse only if we have a definite and firm conviction that an error of judgment was committed." <u>Nalle</u>, 55 F.3d at 191 (internal quotation marks and citation omitted).

At the outset, we note that it is important to define the IRS's "position" during the administrative and court proceedings. In its brief, the IRS distances itself from the specifics of Baker's report by asserting that the IRS position of a discount of less than 25% was far more important than the actual 3% figure asserted by the agency.[6] Therefore, according to the IRS, the Tax Court did not abuse its discretion by characterizing the IRS's "position" as being that partition was a viable alternative and that the cost of partition would be less than the amount of the discounts claimed by the estates.

---

[6]At oral argument, counsel for the Government stated that the agency's position changed during the course of the administrative and judicial proceedings, but she acknowledged that there is nothing in the record to indicate any change in the Government's position. We note, however, that in its supplemental response to the estates' motion for an award of fees and costs, the agency characterized its position as being "that there was a genuine issue of fact regarding the valuation discounts asserted by petitioners."

10

At one point in its opinion, the Tax Court states that the IRS's "position during the administrative proceeding was that the only reduction or discount from the fair market value of the trust's real property should be the cost to partition the realty so that the partitioned interest of each decedent could be converted into and sold as a full fee interest." Later in its opinion, the Tax Court describes the IRS's position as follows: "partition was a viable alternative and that the cost of partition would be less than the amount of the discounts claimed by the estates." This characterization is quite inconsistent with the record. The IRS acknowledges in its brief that the reasonableness of its position in the administrative proceedings must be determined as of the date of the notice of deficiency. The valuation of the 16 tracts at issue in the notices of deficiency is exactly the same amount determined in the Baker report, which was attached to the notices of proposed adjustments. In its post-trial brief, the IRS asked the court to value the decedents' interests in the 16 tracts at the exact same amounts referenced in the Baker report and the notices of deficiency. Thus, the record demonstrates that the position of the IRS remained the same throughout the administrative and judicial proceedings in this case: The only discounts allowable were those determined by Baker in his report, based on the estimated costs of a hypothetical partition in kind. As we have noted, the IRS bears the burden of proving that this position was substantially justified.

11

The Tax Court held that the IRS's position was substantially justified for the following reasons: (1) during the administrative and pretrial proceedings, the estates did not present facts or arguments to the IRS to discredit the IRS's position that partition was a viable alternative; and (2) the estates increased the amount of discount claimed from 25% to 50%, from 50% to 60%, and from 60% to 90%. We shall examine each of these bases separately.

B

(1)

The Tax Court held that because the estates refused to authorize their counsel to attend a second Appeals Conference in Houston after the estates filed their petitions, unless the Appeals Officer agreed to a minimum discount of 45%, the estates failed to present facts or arguments to the IRS to discredit the IRS's position that partition was a viable alternative. Thus, according to the Tax Court, the IRS was not confronted with the facts concerning the difficulties connected with the use of partition until receipt of one of the estates' expert's reports approximately 30 days prior to trial; and the factual assumptions in that report were not fully addressed until the estates' witnesses testified at trial. Accordingly, the Tax Court concluded that the IRS was not confronted with the factual predicate that partition may not have been a viable approach until trial.

The estates contend that the Tax Court was completely mistaken. They assert that in their protests dated August 5, 1998

12

-- more than six months before the IRS issued the notices of deficiency -- they objected to Baker's partition analysis because it was based on self-serving assumptions contrary to the facts and lacked legal support; and they pointed out that if a hypothetical willing buyer had attempted an actual partition of the 16 noncontiguous tracts, it would have been vigorously resisted by the remaining co-owners. Attached to the protests were letters from experts dated July 29 and July 31, 1998, summarizing substantial difficulties involved in a hypothetical Louisiana partition proceeding. The estates assert that the IRS was thus in possession of this information well before it took its position. Furthermore, the estates contend that the IRS has a duty to conduct a reasonable investigation that would have revealed the flaws in its position and is chargeable with knowledge of relevant judicial decisions. Thus, the IRS knew or had reason to know of the difficulties connected with the use of partition in these cases well before it took its position.

The estates also contend that the Tax Court erroneously relied on their refusal to attend a settlement conference in Houston. They point out that they had already attended one appeals conference in Shreveport on October 20, 1998, and had made a good faith effort to settle with the IRS. They state that they considered sending their counsel to Houston, but declined to do so based on the assessment of their likelihood of success, the costs, and no assurance of any meaningful concessions by the IRS. They

13

state that they nevertheless continued to correspond and negotiate with the appeals officer by telephone, which resulted in settlement of the vast majority of the other issues that were in dispute.

The estates contend further that the IRS, by relying on Baker's report, was attempting to recycle the "unity of ownership for disposal" theory that this court rejected in Estate of Bright v. United States, 658 F.2d 999 (5th Cir. 1981) (en banc), insofar as it sought to apply family attribution. They maintain that implicit in Baker's opinion that Mr. Baird's interest in the 16 non-contiguous tracts could be easily partitioned into equally valued lots is the assumption that co-owners will cooperate such that a partition in kind would be voluntary or uncontested. In Baker's theoretical partition in kind, all of the co-owners act as a unit for purposes of disposing of all 16 tracts and share the partition costs pro rata. The estates argue that Louisiana law does not provide that attorneys' fees or other costs of partition will be apportioned pro rata among the co-owners when the partition is contested. The estates assert that, under Bright, the interests of Mr. and Mrs. Baird's relatives are irrelevant in determining the value of their estates' interests; the fact that Mr. and Mrs. Baird were married to one another and related to the other beneficiaries of the trust and the trustees is irrelevant; the fact that Mr. Baird's interest passed at his death to other family members is an irrelevant, post-death fact; a hypothetical seller and buyer must be used, not Mr. Baird or his estate or the trustees; a

14

hypothetical buyer is deemed to be aware of the identities of the other co-owners and that they are all members of the same family; and Mr. Baird's 14/65 interest is viewed as a stand-alone, non-controlling interest, and Mrs. Baird's 17/65 interest is viewed likewise.

The IRS responds that it justifiably relied on Baker's report, that it had no duty to conduct an independent investigation into the viability of partition prior to issuing the notices of deficiency, and that it is not unreasonable for the agency to require a taxpayer to submit documentation in support of its position and for the IRS to refuse to concede the case until the taxpayer produces such documentation. It argues that the estates failed to provide any detailed or specific facts in support of their contention that partition would be impracticable.

Our study of the record leads us to conclude that the Tax Court abused its discretion by determining that the IRS satisfied its burden of proof of substantial justification for its position. The Tax Court based its determination on the argument that the IRS received insufficient information from the estates with respect to the viability of partitioning the 16 tracts at issue. We shall therefore describe the information provided by the estates in some detail.

(2)

Mr. Baird's initial estate tax return, filed on March 18, 1996, reported the value of his 14/65 interest in the 16 tracts

15

held by the trust as $707,972.  In support of that valuation, the return included an appraisal report that contained an opinion as to the fair market value of the undivided fee interest in the 16 tracts held by the trust, and then applied a 25% discount for Mr. Baird's fractional interest.  The appraisal report explains that the fair market value of an undivided interest in timberland is generally less than the pro rata portion of the fair market value of the whole as a result of the lack of marketability and the lack of control over the management of the property.  The appraisers estimated a 25% discount for the 16 tracts at issue based on the fact that a minority owner of timberland cannot force the sale of the timber and marketing of timberland has a relatively high degree of difficulty which is compounded by a minority interest.  In support of their estimate of the 25% discount, they cited and attached copies of two cases:  <u>Estate of Cervin v. Commissioner</u>, 68 T.C.M. 1115 (1994) (allowing 20% discount for minority interest and lack of marketability for decedent's 50% undivided community interest in four parcels of real estate) and <u>Lefrank v. Commissioner</u>, 66 T.C.M. 1297 (1994) (allowing 20% discount for minority interest and 10% discount for lack of marketability).  The 25% discount was an average of the discounts allowed in those two cases.

Also attached to Mr. Baird's estate's initial tax return was a supplemental statement containing additional information about the valuation of the 16 tracts and the justification for claiming

16

a 25% fractionalization discount.  The statement cites this court's decision in <u>Bright</u>, for the proposition that the valuation of Mr. Baird's interest should be determined as if it were being purchased by a hypothetical willing purchaser.  The statement asserts that an in-kind partition of the property could only be accomplished with the unanimous consent of all remaining co-owners and the co-trustees of the trust, and that, under the circumstances, the likelihood of an in-kind partition is so remote as to be negligible.  It asserts that a hypothetical willing purchaser of the 14/65 interest, who chose to receive his pro rata share of distributions from timber cutting, would likely discount the price by substantially more than 25% because he would have no right to enter into timber cutting or other agreements without the joinder of the other co-owners.  Finally, the statement lists the considerations that would have to be taken into account by a hypothetical willing purchaser who chose to file a lawsuit to force a partition by licitation (sale of the entire property at a sheriff's sale).

A copy of the trust agreement for the trust holding the 16 tracts was also attached to Mr. Baird's initial estate tax return. The trust agreement provides that any transfer of trust property shall be made only to a principal or income beneficiary of the trust unless written consent is given by all current beneficiaries for sale to a third party.  It provides further that any sale or

17

transfer of trust property is subject to the terms and conditions of the trust.

Mrs. Baird's initial estate tax return, filed on January 31, 1997, and Mr. Baird's amended estate tax return, filed on February 24, 1997, claimed a 50% fractionalization discount from the pro rata fair market value of each of their interests in the 16 tracts held by the trust.

In support of the 50% discount, both returns attached a supplemental statement and an appraisal by James A. Young. The supplemental statement asserts that a 50% discount is appropriate based on lack of control. It asserts further that the likelihood of an in-kind partition is so remote as to be negligible. The statement explains that the 25% discount claimed in Mr. Baird's original return was based on an appraisal which did not take into account any actual comparable transactions, but was instead an average of discounts allowed in the two cases cited in the appraiser's report.

Young's report described transactions involving the acquisition of non-controlling fractional interests in Louisiana timberland from August 1992 through August 1996. The transactions analyzed by Young reflected that the fractionalization discounts were much larger for sales of non-controlling interests (sales in which the purchaser's interest after acquisition was less than 80%) than for sales of controlling interests (sales in which the purchaser's interest after acquisition equaled or exceeded 80%).

18

In August 1998, the estates filed a protest letter in response to the IRS's notices of proposed adjustments. The protest letter observes that at a March 27, 1998 meeting -- before the date of the Baker report -- the IRS examining agent's supervisor, Frederick J. Herzog, insisted that all fractionalization discounts are invalid. The letter states that Herzog persisted in that belief even after the estates' counsel cited several cases in which such discounts were allowed and approved by the courts. The protest letter points out that, under Louisiana law, a buyer of timberland from a co-owner or co-heir may not remove the timber without the consent of co-owners representing at least 80% of the ownership interest in the land and quotes the relevant Louisiana statute in its entirety. The protest notes that Baker's report ignores the fact that, at the time of the decedents' deaths, no co-owner had a large enough interest in the 16 tracts to obtain the legal right to cut timber by purchasing either decedent's interest. The protest discusses case law in which large fractionalization discounts were allowed, and it quotes at length from a Ninth Circuit case that discusses the difficulties of partition. The protest points out that Baker's approach is based on speculation about the costs of partition; and that no empirical data is offered to support any of his assumptions regarding the costs of a Louisiana partition proceeding. It notes that Baker's reliance on the Estate Agent for his assumption that the legal costs of a partition proceeding would be $100,000 is unfounded, and questions whether the Estate Agent has the knowledge

19

or experience to make such an estimate. The letter cites <u>Tri-State Concrete Co., Inc. v. Stephens</u>, 395 So.2d 894 (La. App. 2d Cir. 1981), as an example of the Louisiana partition process. Finally, the letter states that Baker's opinion that the tracts could easily be partitioned into "equal valued lots" is unfounded, as well as contrary to the facts and judicial experience regarding Louisiana partitions. It states that, "[u]nder the circumstances of this case any attempt to partition the sixteen (16) tracts in question would have been vigorously resisted by the remaining co-owners."

Attached to the protest letter were letters from two of the estates' experts, Lewis C. Peters and James A. Young, commenting on Baker's report. Young's letter discusses the difficulties and risks involved in a partition proceeding. He states that the fact that the timberland has varying road frontages and varying timber volumes and different land qualities makes it most difficult to assume that one could divide the tracts acre per acre. Although a division of value would be more reasonable, a very extensive tally of timber would be required, as well as complete surveys of the property. According to Young, this would be a very time-consuming process requiring numerous experts to include surveyors, appraisers, foresters, legal counsel, etc.

Peters's letter states that, while an owner would consider the partition alternative, including the uncertainty, time, and cost, it is "quite another thing to think that the hypothetical willing

20

buyer would wade into such a fracas with the sellers' relatives only to be reimbursed his out-of-pocket costs."

Finally, the Tax Court's opinion in which it allowed the 60% discount states that the facts available to a hypothetical knowledgeable buyer, which should be factored into the discount, include (1) that the family had experienced prior disagreement which precipitated the creation of the trust; and (2) that one family member had been allowed to independently manage the 16 parcels and that his management was poor. The Tax Court stated that these circumstances, that would have been perceived by a willing buyer, indicate that the remaining family members would be resistant to and make it difficult for an outside buyer. If these facts were available to a knowledgeable buyer, it is obvious that they were equally available to the IRS at the time it took its position based on Baker's report.

(3)

Based on the foregoing, it is clear that, before the IRS issued the notices of deficiency, the estates had provided enough information to the IRS to alert it to the fact that the in-kind partition described in the Baker report was not viable, and that his estimate of the costs of a hypothetical partition in kind was speculative and unsupported. The IRS has a duty to examine the information provided by taxpayers and to make some effort to substantiate a demand for payment of additional taxes in a notice of deficiency. See Estate of Johnson v. Commissioner of Internal

21

Revenue, 985 F.2d 1315, 1319 (5th Cir. 1993); Portillo v. Commissioner of Internal Revenue, 988 F.2d 27, 29 (5th Cir. 1993) (holding that Tax Court abused its discretion in denying costs where notice of deficiency "lacked any ligaments of fact" and was issued on the basis of an unsubstantiated and unreliable 1099 Form); Lennox, 998 F.2d at 248 (IRS's suspicion regarding ownership of apartments "was not a sufficient basis for issuance of the notice [of deficiency], in light of the opportunity for further, and much needed, investigation"); Nicholson, 60 F.3d at 1029 (holding that IRS could have discovered that its position was not justified had it "adequately investigated the case before issuing the Notice [of deficiency]"). The IRS cannot merely rely on an expert's opinion, especially when that expert's opinion is unfounded and speculative. See Minahan v. Commissioner of Internal Revenue, 88 T.C. 492 (1987) (IRS's "assertion that the litigation position was reasonable solely because valuation is a factual inquiry and that the valuation herein was based on an expert appraisal is woefully inadequate to establish that his position is reasonable") (cited with approval by this court in Cervin, 111 F.3d at 1263).

Furthermore, the IRS is charged with knowledge of relevant legal authorities. See Cervin, 111 F.3d at 1262 (observing that this court and other circuits have held that IRS's position was not substantially justified when it ignored state law that clearly supported taxpayer's position); Bouterie v. Commissioner, 36 F.3d

22

1361, 1372-73 (5th Cir. 1994) (rejecting IRS's position where it deliberately ignored settled law); <u>Nicholson</u>, 60 F.3d at 1029 (noting that "[e]ven a cursory analysis of New Jersey law would have revealed the deficiency in [the Commissioner's] position").

The estates had furnished citations to relevant authorities to the IRS to support their claimed discounts long before the notices of deficiency were issued.  Thus, the IRS is charged with the knowledge that in <u>Bright</u>, this court rejected the family attribution doctrine.  Accordingly, it is charged with the knowledge that Baker had no basis for assuming that the co-owners would cooperate and voluntarily agree to a partition in kind because they were all members of the same family.  The IRS is also charged with knowledge of this court's decision in <u>Bonner</u>.  In <u>Bonner</u>, we said:

> [C]ourts have consistently recognized that the sum of all fractional interests in a property is less than the whole and have upheld the use of fractional interest discounts in valuing undivided interests.  The discount is an acknowledgment of the restrictions on sale or transfer of property when more than one individual or entity hold undivided fractional interests.  <u>Potential costs and fees associated with partition or other legal controversies among owners, along with a limited market for fractional interests and lack of control, are all considerations rationally related to the value of an asset</u>.

<u>Bonner</u>, 84 F.3d at 197-98 (citations omitted; emphasis added). This case makes clear that the costs of partition are only one among many considerations in valuing fractional interests in

23

property.  Therefore, <u>Bonner</u> alerts the IRS to the incorrectness of Baker's report, which took the position that the costs of partition were the <u>sole</u> discount allowable.

Finally, the IRS is charged with knowledge of Louisiana law relating to the partition of real property.  The case cited in the estates' protest letter in August 1998 further undermines Baker's opinion regarding the viability of partitioning the 16 tracts.  <u>See</u> <u>Tri-State Concrete</u>, 395 So.2d at 897-97 (stating that to effect partition in kind, property must be divided into lots, which are then drawn for by the parties by chance; that there must be as many lots as there are shares or roots involved; and describing the difficulty of dividing real property into tracts of equal value, and the need for expert testimony and extensive survey work to accomplish such a division).

Moreover, it is apparent that the IRS had locked into its story and was sticking to it.  Even <u>after</u> the trial -- when the IRS had in its possession all of the evidence supporting the discounts claimed by the estates, and all of the evidence demonstrating that partition of the property was not feasible -- the IRS persisted in maintaining an unjustifiable position that the property should be valued at the amounts calculated in the Baker report.  In its post-trial brief, the IRS continued to argue that partition could be accomplished easily and that no fractionalization discount was warranted in this case.

The Tax Court therefore abused its discretion by accepting the IRS's argument that its position was substantially justified because the estates failed to furnish detailed information about the risks and difficulties of partition.  This justification would make sense only if the IRS had changed its position after it received the information we have detailed above.  Its post-trial brief demonstrates that it did not change its position after it came into possession of the information.  Therefore, the evidence offers no support for an assumption that the IRS would not have issued notices of deficiency, and would not have maintained its position that no fractionalization discount was warranted, even if it had in its possession all of the evidence presented by the taxpayers at trial.[7]

C

The second justification relied on by the Tax Court in finding that the IRS's position was substantially justified is the fact that the estates increased the amount of discount claimed from 25

---

[7]Without commenting on its relevance, we granted the estates' motion to supplement the record on appeal with a copy of Baker's report of May 28, 2004, in which he cited the Tax Court's opinion in the case before us, but nevertheless proposed to allow only a 4.59% discount from the fair market value of the 9.23% interest in the same 16 tracts owned by Mrs. Baird's now-deceased brother, O. E. Williams.  His report also states that such a partition would take less than one year to complete.  The estates argue that, notwithstanding the Tax Court's decision in this case that a 55% fractionalization discount is the average for non-controlling interests in Louisiana timberland, Baker's report will force Williams's estate to litigate the same issue that the Tax Court has already decided in these cases.  A time comes when even the most tenacious should recognize a losing position and act in good grace.

to 50%, from 50 to 60%, and from 60% to 90%, with each claimed discount supported by expert opinion. The Tax Court cited authority for the proposition that values or discounts reported or claimed on an estate tax return may be considered admissions and to some extent binding or probative and may not be overcome without proof that such admissions are wrong. See Estate of Hall v. Commissioner, 92 T.C. 312, 342 (1989); Estate of Pillsbury v. Commissioner, T.C. Memo. 1992-425; Estate of McGill v. Commissioner, T.C. Memo. 1984-292. It stated that the estates had failed to demonstrate that any facts or legal principles changed between the time the 25% discount was claimed and the time the 90% discount was claimed.

The estates contend that the Tax Court erred by focusing on the estates' position, which is irrelevant to whether the IRS met its burden of proving substantial justification for its position that the estates were entitled to discounts of only 3.37% and 3.11%. Because the IRS's position was based on Baker's report, the estates contend that the relevant inquiry is whether the grounds described in Baker's report were sufficient to establish that the IRS acted reasonably at the time it took its position. They maintain that Baker made numerous unsupported assumptions in his hypothetical partition valuation and offered no factual or legal support for them.

The estates explain that when they filed Mr. Baird's original return, they did not have an appraisal showing the proper amount of

26

fractionalization discount, and the report filed with the return estimated a 25% discount based on an average of discounts allowed in two court decisions. Subsequently, they hired an expert whose original report stated that 50% discounts were appropriate; his report provided the necessary support for the 50% discount claimed in Mrs. Baird's estate tax return and Mr. Baird's amended return and first claim for refund. According to the Tax Court's opinion in 2001, holding that a 60% discount was appropriate in this case, the estates discovered information that caused them to further reduce the reported value of the fractional interests by claiming a 60% discount. The estates assert that they first argued that a 90% discount was appropriate in their first post-trial brief, long after the IRS had taken its position; and the 90% figure was based on market comparables introduced into evidence at trial.[8]

We think that the Tax Court abused its discretion by relying on the increases in the discounts claimed by the estates as proof of substantial justification. The IRS's consistent position was that <u>no</u> <u>discounts</u> should be allowed other than the costs of partition estimated in the Baker report. The cases cited by the Tax Court are unrelated to the issue of whether the IRS's position was substantially justified. Furthermore, those authorities are off point as related to this case because the estates offered

_____

[8]James Steele, one of the estates' expert witnesses, testified at trial that if, hypothetically, he were to make an offer for Mr. Baird's interest, he would require a 90% discount.

27

evidence to explain each of the changes, and supported each of their claimed discounts with expert opinion. Finally, the 90% discount was claimed post-trial. The IRS had already taken its position at the time of its notice of deficiency, a position that it maintained in its answer to the estates' petition and, indeed, throughout the litigation; thus the post-trial increase from 60 to 90% had no effect whatsoever on the litigating position of the IRS. The IRS did not present any credible evidence or call any competent witnesses to support the reasonableness of its position during the course of the litigation and, accordingly, it has failed to satisfy its burden of proving that its position was substantially justified. See Lennox, 998 F.2d at 248-49 (IRS's position must be supported by record evidence in order to be substantially justified); Nicholson, 60 F.3d at 1029 ("The Commissioner cannot have a reasonable basis in both fact and law if it does not diligently investigate a case.") (internal quotation marks and citation omitted).

III

In the Tax Court, the IRS contended that, if its position was found not to be substantially justified, then the amount of the estates' claim for attorneys' fees is unreasonable because it exceeds the statutory limit. Thus, a remand is necessary for the Tax Court to determine the amount of fees to be awarded.

28

## IV

For the foregoing reasons, the judgment of the Tax Court is REVERSED, and the case is REMANDED to the Tax Court for a determination of the amount of fees and costs to be awarded to the taxpayers.

REVERSED and REMANDED.