T.C. Memo. 2008-62

UNITED STATES TAX COURT

NEW YORK GUANGDONG FINANCE, INC., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 14809-04.                 Filed March 11, 2008.

<u>Larry Kars</u>, for petitioner.

<u>Joseph W. Fogelson</u> and <u>Nicole F. Cammarota</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MARVEL, <u>Judge</u>:  By a notice of deficiency dated May 25, 2004, respondent determined the following withholding tax deficiencies and additions to tax against petitioner:[1]

_____

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and

(continued...)

| Year | Withholding tax deficiencies | Additions to tax sec. 6651(a)(1) | Addition to tax sec. 6651(a)(2) |
|------|------|------|------|
| 1994 | $35,416 | $8,854.00 | -0- |
| 1995 | 102,532 | 25,633.00 | -0- |
| 1996 | 29,900 | 6,727.50 | $7,475 |

After concessions,[2] the issues for decision are:

(1) Whether petitioner, a corporation that paid interest to Guang Xin Enterprises, Ltd. (GXE), during 1994, 1995, and 1996 (the years in issue), is liable for withholding tax deficiencies under section 1461 for the years in issue in the amounts determined by respondent or in some lesser amounts; and

(2) whether petitioner is liable for additions to tax under section 6651(a)(1) for failing to file Forms 1042, Annual Withholding Tax Return for U.S. Source Income of Foreign Persons, or Forms 1042S, Foreign Person's U.S. Source Income Subject to Withholding, for the years in issue.

---

[1](...continued)
all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]Respondent concedes that petitioner is not liable for the sec. 6651(a)(2) addition to tax determined in the notice of deficiency.

Petitioner alleged in its petition that the expiration of the period of limitations barred the assessment and collection of tax for the years in issue. However, petitioner did not pursue this issue at trial or on brief, and we consider it abandoned. See Leahy v. Commissioner, 87 T.C. 56, 73-74 (1986).

In order to decide issue (1), we must first decide how much interest petitioner paid to GXE during each of the years in issue, and then we must decide whether any of the interest paid to GXE qualifies for exemption under the Agreement for the Avoidance of Double Taxation and the Prevention of Tax Evasion With Respect to Taxes on Income, U.S.-P.R.C., Apr. 30, 1984, T.I.A.S. No. 12065 (China Agreement), either because GXE collected the interest as an agent for Guangdong International Trust & Investment Corp. (GITIC), a corporation resident in China during the years in issue, or because the loan transaction with GXE was in substance a loan transaction with GITIC.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts, the supplemental stipulation of facts, and the second supplemental stipulation of facts are incorporated herein by this reference. Petitioner's principal place of business was in Houston, Texas, when the petition was filed. Petitioner is a closely held corporation that was incorporated in Delaware on December 2, 1987.

During the years in issue, petitioner engaged in loan transactions with GITIC and GXE, two foreign corporations. GITIC was a financial institution that was incorporated in 1980 under the laws of the People's Republic of China and, throughout the years in issue, was wholly owned and controlled by the government

of the Chinese Province of Guangdong (Guangdong government). GXE was incorporated in 1985 under the laws of Hong Kong and was a wholly owned subsidiary of GITIC from the date of its incorporation through the end of 1996.

During the years in issue, GXE shared office space with GITIC in GITIC Plaza in Hong Kong. The office suite housed approximately 40-50 employees; approximately 6 to 8 of those employees worked for GXE. GXE's employees sat in separate rooms from GITIC's employees. GXE's officers included Lin Wensheng,[3] a director and vice president of GITIC.

On March 20, 1990,[4] petitioner borrowed $2 million from GXE at an interest rate calculated as 1.5 percent over the London-based Interbank Borrowing Rate, adjusted semiannually. The loan agreement stated a term of 1 year, which could be extended for an additional year.[5] Lin Wensheng signed the loan agreement on behalf of GXE, and Guo-Qing Tan signed on behalf of petitioner.

---

[3]The record includes documents that romanize Lin Wensheng's name several different ways, including Ling Weizeng and Lee Wang Chung. In this opinion, we adopt the romanization used in the GITIC brochure that was admitted into evidence as Exhibit 8-J.

[4]The English version of the loan agreement erroneously shows an agreement date of Mar. 20, 1992.

[5]Under the loan agreement, the maximum term of 2 years would have ended on Mar. 20, 1992. However, petitioner's president, Lawrence Wong (Mr. Wong), credibly testified that the loan had not been repaid before or during the years in issue, and the record generally supports Mr. Wong's testimony. In addition, the parties do not dispute that petitioner had at least one outstanding GXE loan during the years in issue.

The loan agreement identified GXE as the sole lending party. GXE submitted a Form W-8, Certificate of Foreign Status, dated March 20, 1990, to petitioner in connection with the loan.

On August 18, 1994, GITIC agreed to lend petitioner $2 million. The GITIC loan agreement provided for a 2-year term and interest payments at a rate of 10 percent for the first year and a predetermined market rate for the second year. Guo-Qing Tan also signed the GITIC loan agreement on behalf of petitioner, and Yao-Wei Xu signed on behalf of GITIC. On or about August 23, 1994, petitioner exercised its right to borrow $2 million under the GITIC loan agreement. GITIC wired net loan proceeds of $1,988,000 to petitioner on or about the same day.[6]

On its Forms 1120, U.S. Corporation Income Tax Return, for 1994, 1995, and 1996, petitioner claimed deductions for interest it allegedly paid during those years. Two tax return preparers, Mr. Steinhardt and Mr. Choy, assisted in the preparation of the Forms 1120. Petitioner attached Form 5472, Information Return of a 25% Foreign-Owned U.S. Corporation or a Foreign Corporation Engaged in a U.S. Trade or Business, to its 1994 Form 1120. Petitioner, however, did not attach Form 5472 to its Forms 1120 for 1995 or 1996.

---

[6]The net loan amount was calculated by subtracting bank and service fees of $12,000 from the $2 million GITIC loan amount.

The 1994 Form 5472 identified GITIC as a 25-percent-or-more foreign shareholder of petitioner. The 1994 Form 5472 stated that GITIC was incorporated in China and conducted its principal business activities and filed income tax returns there. The 1994 Form 5472 identified GXE as a related party to petitioner and described GXE as a foreign person conducting its principal activity as a "trading company". Petitioner reported $99,145 of interest paid to GXE during 1994 on account of a loan with a beginning and ending balance of $2 million. The 1994 Form 5472 further stated that GXE principally conducted its business activity in and filed its income tax returns as a resident of Hong Kong.

On a date that is not in the record, respondent issued to petitioner a Form 4564, Information Document Request, regarding interest paid by petitioner. By letter dated September 8, 1998, petitioner informed Mr. Steinhardt that it paid interest to GITIC of $177,010.41 in 1995 and $139,798.61 in 1996 on account of the GITIC loan and that it paid interest to GXE of $164,762.08 in 1995 and $77,099.91 in 1996 on account of the GXE loan. Petitioner apparently furnished a copy of the September 8, 1998, letter to respondent in connection with respondent's examination of petitioner's returns.

On July 27, 1999, petitioner filed a Form 1120X, Amended U.S. Corporation Income Tax Return, with a Form 5472 attached,

for each year in issue.[7]  The 1994 amended Form 5472 reported that petitioner obtained an additional $2 million loan from GXE during 1994.[8]  The 1995 and 1996 Forms 5472 reported that petitioner maintained the $4 million loan balance through the end of 1996.  The Forms 5472 also reported that petitioner paid interest to GXE of $118,052.76, $341,772.49, and $99,666.39, for 1994, 1995, and 1996, respectively.

Petitioner did not file Form 1042 or Form 1042S for any of the years in issue, on the advice of its president Lawrence Wong (Mr. Wong).  Before joining petitioner, Mr. Wong worked as a certified public accountant (C.P.A.) and as a financial manager.  Mr. Wong began his career at Arthur Young & Co., an accounting firm.  He then practiced privately for 8 to 10 years in New York City.  After practicing as a C.P.A., Mr. Wong owned and managed a finance corporation and served as its president from 1980 until the time of trial.  Mr. Wong became a shareholder of petitioner in 1992 and its president in 1996.

On May 25, 2004, respondent issued a notice of deficiency to petitioner in which respondent determined that petitioner was liable for withholding tax deficiencies and additions to tax for the years in issue.  Respondent calculated the deficiencies using

---

[7]No paid preparer signed the Forms 1120X.

[8]The 1994 amended Form 5472 reported a beginning loan balance of $2 million and an ending loan balance of $4 million.

the interest amounts petitioner reported on the Forms 5472 filed with its Forms 1120X.

Petitioner timely petitioned this Court, alleging that respondent's determinations were in error. On June 13, 2005, petitioner filed an amendment to its petition specifically alleging that respondent erroneously calculated the deficiencies for the years in issue because the Forms 5472 upon which respondent relied reported interest paid to both GXE and GITIC.

In connection with the trial that followed, the parties stipulated documentation of certain wire transfers during 1995 and 1996 and excerpts from petitioner's general ledgers for 1995 and 1996. The exhibits reflect that petitioner made the following interest payments on the GITIC and GXE loans during 1995 and 1996:

A. <u>GITIC</u>

| Payment date | Lender | Amount | General ledger acct. |
|---|---|---|---|
| 2/22/95 | GITIC | $102,222.22 | Interest paid |
| 8/23/95 | GITIC | 74,788.19 | Interest paid |
| | | 177,010.41 | |
| 2/23/96 | GITIC | 70,916.67 | Interest paid |
| 8/23/96 | GITIC | 68,881.94 | Interest paid |
| | | [1]139,798.61 | |

[1]Petitioner also paid $65,000 by wire transfer to or for the benefit of GITIC on May 29, 1996, and contends that the payment was an interest payment. However, it does not appear from the record as a whole that petitioner included this payment in computing the amount identified in the Sept. 8, 1998, letter or in its 1996 Form 5472, nor does it appear that respondent included this amount in calculating the 1996 deficiency. Consequently, we do not consider this payment in our analysis.

B. <u>GXE</u>

| Payment date | Payee | Amount | General ledger acct. |
|---|---|---|---|
| 3/31/95 | GXE | [1]$33,475.15 | From EB MMA |
| 3/31/95 | GXE | [2]48,228.68 | Interest paid |
| 9/21/95 | GXE | 83,058.25 | Interest paid |
| | | 164,762.08 | |
| 3/21/96 | GXE | 77,099.91 | Interest paid |

[1]The last digit of this entry does not appear on the exhibit, but we infer that it must be as reflected above because petitioner apparently included this amount in calculating the total amount of interest paid on the GXE loan during 1995 as reflected in the Sept. 8, 1998, letter.

[2]We cannot tell from an examination of the general ledger whether the $33,475.15 payment is included in the $48,228.68 entry. However, because petitioner apparently treated it as a separate and additional interest payment and because the total coincides with the total interest amount in the Sept. 8, 1998, letter, we shall also treat the $33,374.15 payment recorded in the general ledger as a separate payment for purposes of our analysis.

The total payments made on the GITIC loan for 1995 and 1996 and the total payments made on the GXE loan for 1995 and 1996, as summarized above, coincide with the amounts set forth in petitioner's September 8, 1998, letter. However, a comparison of the Forms 5472 that petitioner attached to its Forms 1120X for 1995 and 1996 with the interest amounts in the September 8, 1998, letter reveals the following:

|  | 1995 | 1996 |
|---|---|---|
| Interest paid to GITIC per 9/8/98 letter | $177,010.41 | $139,798.61 |
| Interest paid to GXE per 9/8/98 letter | 164,762.08 | 77,099.91 |
| Total Interest per 9/8/98 letter | 341,772.49 | 216,898.52 |
| Interest reported as paid to GXE on Forms 5472 attached to amended returns | 341,772.49 | 99,666.39 |
| Difference | -0- | 117,232.13 |

OPINION

I. Burden of Proof

Generally, the Commissioner's determination is presumed correct, and the taxpayer bears the burden of proving that the determination is erroneous. Rule 142(a)(1); Welch v. Helvering, 290 U.S. 111, 115 (1933). Petitioner argues, however, that the burden of proof should shift to respondent because the notice of

deficiency was capricious and arbitrary.[9]  In support of its position, petitioner cites <u>Portillo v. Commissioner</u>, 932 F.2d 1128 (5th Cir. 1991), affg. in part, revg. in part and remanding T.C. Memo. 1990-68.[10]

In <u>Portillo</u>, the Commissioner determined that the taxpayer had unreported income by comparing the amount of income reported on a Form 1099 that had been issued to the taxpayer by a third party with the amount of income from the third party payor reported on the taxpayer's Form 1040, U.S. Individual Income Tax Return.  <u>Id.</u> at 1131.  When the amounts did not match, the Commissioner concluded that the Form 1099 was accurate, even though the third party who submitted the Form 1099 could not substantiate the amount of income he allegedly paid.  <u>Id.</u>  The Commissioner determined that the taxpayer had received unreported income equal to the discrepancy between the Form 1099 amount and the amount reported on the taxpayer's return, and we upheld the determination.  <u>Id.</u>  The Court of Appeals for the Fifth Circuit reversed, holding that before the Commissioner could make a determination that a taxpayer received unreported income, he

_____

[9]Petitioner does not contend that sec. 7491(a), which shifts the burden of proof to the Commissioner if its requirements are met, applies, and the record does not contain sufficient evidence to establish that petitioner satisfies the sec. 7491(a) requirements.

[10]This case is appealable, barring a stipulation to the contrary, to the Court of Appeals for the Fifth Circuit.  See sec. 7482(b)(1)(B).

needed "predicate evidence supporting * * * [his] determination." Id. at 1133. The Court of Appeals concluded that the Commissioner could not simply rely on a Form 1099 in making his determination when the taxpayer contested the accuracy of the Form 1099.

This case is distinguishable from Portillo. Respondent did not determine that petitioner had unreported income, nor did he arbitrarily attribute veracity to the statement of a third party when making his determination. Respondent used the Forms 5472 that petitioner filed with its amended income tax returns to determine that petitioner was liable for withholding taxes. Petitioner's Forms 5472 reported interest paid to GXE, a Hong Kong corporation that did not appear to satisfy the residency requirements for favorable tax treatment under the China Agreement.[11]

Petitioner argues, however, that respondent was on notice because its Forms 5472 reported two loans, one of which was made by GITIC, a Chinese corporation that is exempt from U.S. income tax under the China Agreement. Petitioner alleges that it gave a copy of its September 8, 1998, letter containing a summary of interest paid during 1995 and 1996 on the GITIC and GXE loans to

---

[11]The parties do not dispute that Hong Kong was not a part of China during the years in issue. The Court takes judicial notice that Hong Kong was a crown colony of the United Kingdom until it became a Special Administrative Region of the People's Republic of China on July 1, 1997. See Fed. R. Evid. 201.

respondent before he issued his notice of deficiency and therefore respondent was on notice that a portion of the reported interest was not subject to U.S. income tax withholding under the China Agreement.

Petitioner's argument ignores the fact that petitioner filed Forms 1120X under penalties of perjury before respondent issued the deficiency notice and 10 months <u>after</u> petitioner sent the September 8, 1998, letter to its accountant. The interest payments that petitioner reported on the Forms 5472 attached to the Forms 1120X are inconsistent with the letter in several respects. Respondent did not act capriciously or arbitrarily when he determined on the basis of the residency of the interest recipient (Hong Kong) and the amounts petitioner reported on its Forms 5472 that petitioner had income tax withholding deficiencies. We conclude, therefore, that the burden of proof remains with petitioner.

II. <u>Taxation of Interest Received by Foreign Corporations</u>

A. <u>Generally</u>

Except as provided in section 881(c), section 881(a) imposes a tax of 30 percent on, inter alia, interest received from United States sources by a foreign corporation[12] to the extent the

---

[12]A "foreign corporation" is a corporation that is not organized in the United States or under the law of the United States or of any State. Sec. 7701(a)(4) and (5). GITIC was a corporation organized under the laws of China, and GXE was a

(continued...)

interest received is not effectively connected with the conduct of a trade or business within the United States.[13]  Section 1442(a) generally requires the payor of interest subject to the tax imposed by section 881(a) to deduct and withhold that tax at the source.  If the payor does not do so, then it becomes liable for such taxes under section 1461.

Under section 894, treaty provisions may modify the Code, including its withholding tax provisions.  However, foreign corporations are not exempt from U.S. income taxation under a treaty between the United States and a foreign country unless the treaty is an income tax treaty and the corporation is a qualified resident of such foreign country.  Sec. 884(e)(1).  A qualified resident means, with respect to any foreign country, any foreign corporation which is a resident of such foreign country unless (1) 50 percent or more of the value of the corporation's stock is owned by individuals who are not residents of that foreign

---

[12](...continued)
corporation organized under the laws of Hong Kong.

[13]Sec. 881(c)(1) generally exempts portfolio interest received by a foreign corporation from sources within the United States from the sec. 881(a) tax.  "Portfolio interest" is defined as interest paid on certain registered and unregistered obligations that would otherwise be subject to tax.  Sec. 881(c)(2).  Portfolio interest, however, does not include such interest received in certain circumstances by a bank in the ordinary course of business, by a 10-percent shareholder, or by a controlled foreign corporation from a related person.  Sec. 881(c)(3).  Petitioner does not argue that the interest in issue was portfolio interest.

country or who are not citizens or resident aliens of the United States or (2) 50 percent or more of the corporation's income is used to satisfy liabilities to persons who are not residents of the foreign country or residents or citizens of the United States. Sec. 884(e)(4)(A). The Code specifically lists exceptions for wholly owned subsidiaries of publicly traded corporations. See sec. 884(e)(4)(B). However, no explicit exception exists for wholly owned subsidiaries of privately owned or government-owned corporations. See id.

B.  China Agreement

Article 10, paragraph 3 of the China Agreement provides:

> interest arising in * * * [the United States] and derived by the government of * * * [the People's Republic of China] or any financial institution wholly owned by that government, or by any resident of * * * [the People's Republic of China] with respect to debt-claims indirectly financed by the government of * * * [the People's Republic of China] or any financial institution wholly owned by that government, shall be exempt from tax in the * * * [United States].

The China Agreement applies only to "residents of one or both of the Contracting States." Id. art. 1. The two Contracting States to the China Agreement are the People's Republic of China and the United States of America. Id. art. 3, par. 1(c). A resident of a Contracting State is a person who is liable to pay tax to that State by reason of residency, location of offices, place of incorporation, or other similar criterion. Id. art. 4, par. 1.

Respondent determined that petitioner is liable for withholding taxes on all of the interest reported on its Forms 5472 filed with its 1994, 1995, and 1996 Forms 1120X because the forms listed GXE, a Hong Kong corporation, as the interest recipient. Petitioner argues that (1) the interest reported on the Forms 5472 included interest paid to GITIC, a corporation resident in China that was entitled to favorable tax treatment under the China Agreement during the years in issue, and that (2) interest paid to GXE should be treated as interest paid to GITIC. Petitioner contends that the GXE loan was actually a loan from GITIC and that GITIC chose to distribute the net loan proceeds through GXE. Petitioner contends, therefore, that the loan originated with the Guangdong government and should be exempt under the China Agreement. Alternatively, petitioner argues that GXE is GITIC's agent and, as such, collected interest on the GXE loan on GITIC's behalf.

C.  Interest Paid Directly to GITIC

Respondent concedes that any interest payments made directly to GITIC with respect to a loan made by GITIC fall squarely within the exemption from U.S. taxation provided in the China Agreement. Respondent argues, however, that GXE and not GITIC made the $2 million "GITIC" loan during the years in issue and that the interest in question was paid to GXE on that loan. Alternatively, respondent appears to argue that there are three

loans at issue--two from GXE and one from GITIC. Respondent seems to interpret the Forms 5472 as reporting petitioner's payment of interest on two loans from GXE and none from GITIC. Respondent argues that all interest reported on the Forms 5472 was attributable to GXE loans and was properly subject to U.S. income tax withholding. Respondent urges this Court to treat petitioner's Forms 5472 as admissions that can only be overcome by cogent proof. See Estate of Hall v. Commissioner, 92 T.C. 312, 337-338 (1989); Estate of Baird v. Commissioner, T.C. Memo. 2002-299, revd. on other grounds and remanded 416 F.3d 442 (5th Cir. 2005).

1.   Number of Loans Made by GXE

The preponderance of the evidence establishes that, during the years in issue, petitioner had at least one outstanding loan from GXE with a principal balance of $2 million and one outstanding loan from GITIC with a principal balance of $2 million. Moreover, we are satisfied that regardless of the number of loans that petitioner may have obtained from GXE, the principal balance of the GXE loan(s) during the years in issue did not exceed $2 million. Mr. Wong credibly testified that petitioner received only $2 million from GXE. The interest payments recorded in petitioner's general ledger for 1995 and 1996 match the amounts petitioner reported to Mr. Steinhardt in the September 8, 1998, letter that showed one loan by GXE and one

by GITIC.[14]  The total amount of interest petitioner reported on its 1995 Form 5472 coincides with interest paid to GITIC and GXE as recorded in petitioner's general ledger and reported in the September 8, 1998, letter.  The evidence supports a finding that petitioner had two outstanding $2 million loans, one from GITIC and one from GXE, and we so find.

>   2.   <u>Whether Any Interest Attributable to the GITIC Loan Was Included on the Forms 5472 Attached to Petitioner's Forms 1120X</u>

We now address whether any of the interest reported on petitioner's Forms 5472 was interest paid on account of the GITIC loan, which respondent concedes is exempt from U.S. taxation.  Petitioner has the burden of proving that respondent's determinations are incorrect.  See Rule 142(a)(1); <u>Welch v. Helvering</u>, 290 U.S. at 115.

>   (a) <u>1994</u>

The record is devoid of any credible evidence establishing that the amount of interest paid with respect to the GXE loan was different from that reported on the amended Form 5472 that petitioner attached to its Form 1120X.  Consequently, unless we

---

[14]The details of the GXE loan regarding the date of the loan and the applicable interest rate, as described in the Sept. 8, 1998, letter, are not consistent with the facts and documents regarding the 1990 GXE loan that were included in the parties' stipulations of facts.  Nevertheless, Mr. Wong confirmed in his testimony at trial that, during the years in issue, petitioner had an outstanding loan from GXE in the face amount of $2 million.

conclude that GXE made its loan to petitioner as GITIC's agent or that the GXE loan in substance was a loan from GITIC, we shall sustain respondent's determination with respect to 1994.

(b) <u>1995</u>

The record convincingly establishes that petitioner erroneously reported interest paid with respect to both the GITIC and GXE loans as interest paid to GXE on its 1995 Form 5472. Petitioner's 1995 general ledger and the September 8, 1998, letter confirm that petitioner paid interest of $164,762.08 on the GXE loan and $177,010.41 on the GITIC loan in 1995. Petitioner reported the sum of these amounts on its 1995 Form 5472. Accordingly, we find that $177,010.41 of the $341,772.49 reported on the 1995 Form 5472 was paid on the GITIC loan and was not subject to U.S. taxation under the China Agreement.

(c) <u>1996</u>

The record regarding petitioner's 1996 interest payments supports a finding that on its 1996 Form 5472, petitioner erroneously reported interest paid with respect to both the GITIC and GXE loans as interest paid to GXE. Petitioner's 1996 general ledger and the September 8, 1998, letter are consistent with each other and reflect that petitioner paid interest of $77,099.91 on the GXE loan and $139,798.61 on the GITIC loan in 1996. However, the total interest reported on Form 5472 attached to petitioner's 1996 Form 1120X did not match the total interest paid to GITIC

and GXE as shown in petitioner's general ledger and the September 8, 1998, letter. The total interest reported on petitioner's 1996 Form 5472 was $117,232.13 less than the general ledger and September 8, 1998, letter totals. Petitioner offered no testimony to explain the discrepancy.

We agree with respondent that petitioner's 1996 Form 5472 contains admissions that can only be overcome by cogent proof. See Estate of Hall v. Commissioner, supra at 337-338. Although the record as to 1996 is not as satisfying as the record with respect to 1995 (in that the total interest reported on the 1996 Form 5472 does not equal the total interest paid to GXE and GITIC as shown in the general ledger and the September 8, 1998, letter), we nevertheless believe and conclude that the total interest paid to GXE during 1996 is as shown in petitioner's 1996 general ledger. Petitioner has convincingly established that it paid only $77,099.91 of interest to GXE during 1996. Accordingly, we find that only $77,099.91 of the $99,666.39 reported on the 1996 Form 5472 represented interest paid to GXE.

D. Interest Paid on the GXE Loan

Petitioner admits that GXE is incorporated and located in Hong Kong, a geographical territory that for the relevant period was not covered by the China Agreement.[15] See China Agreement,

---

[15]Petitioner did not timely raise any issue regarding GXE's residency or the taxability of GXE in China, and the location of
(continued...)

arts. 1, 3, 4.  Petitioner argues, however, that because GXE is a wholly owned subsidiary of GITIC, interest paid to GXE is indirectly paid to GITIC, and therefore such interest should be exempt from U.S. taxation under the China Agreement.  Petitioner relies on two alternative theories:  (1) The GXE loan was, in substance, a loan from GITIC; and (2) GXE made the loan and collected interest as an agent of GITIC.

### 1.   Substance Over Form

Petitioner argues that interest paid to GXE should be treated as interest paid to GITIC because the parties intended the loans to be from GITIC, regardless of which entity's name appeared on the loan agreements.  Petitioner contends that the sharing of corporate officers, directors, and office space by GITIC and GXE is evidence of corporate informality that led petitioner to believe it was dealing with GITIC when it entered into the loan agreement with GXE.  Petitioner contends that GITIC, as the parent corporation, made all of the financing decisions for GXE, including the decision to lend money to petitioner.  According to petitioner, GITIC used its assets to fund GXE and enabled GXE to lend money to petitioner.  Petitioner also argues that GITIC guaranteed GXE's loans and that a director of GITIC signed the GXE loan agreement, evidencing the parties'

---

[15](...continued)
GXE's office and its place of incorporation are in Hong Kong.

intent that the loan originate from GITIC.  Petitioner asserts that the form of the transaction--that petitioner borrowed $2 million from GXE and paid interest to GXE on account of that loan--should be disregarded in favor of the true substance of the transaction.  Accordingly, petitioner would recast the GXE loan transaction to reflect that petitioner borrowed an additional $2 million from GITIC, regardless of the fact that GXE signed the loan agreement, distributed the net loan proceeds, and received the interest payments.

As a general rule, a taxpayer is bound by the form of the transaction that the taxpayer has chosen.  Framatome Connectors USA, Inc. v. Commissioner, 118 T.C. 32, 47 (2002), affd. 108 Fed. Appx. 683 (2d Cir. 2004).  A taxpayer may argue that the substance of the transaction should prevail over its form only in limited circumstances "where his tax reporting and actions show an honest and consistent respect for the substance of a transaction."  Estate of Weinert v. Commissioner, 294 F.2d 750, 755 (5th Cir. 1961), revg. and remanding 31 T.C. 918 (1959).  The taxpayer "must provide objective evidence that the substance of the transaction was in accord with the position argued by * * * [the taxpayer] rather than the form set forth by all the relevant documents."  Groetzinger v. Commissioner, 87 T.C. 533, 541 (1986); see also Commissioner v. Natl. Alfalfa Dehydrating & Milling Co., 417 U.S. 134, 149 (1974) ("while a taxpayer is free

to organize his affairs as he chooses, nevertheless, once having done so, he must accept the tax consequences of his choice, whether contemplated or not, * * * and may not enjoy the benefit of some other route he might have chosen to follow but did not").

The record does not support petitioner's contention that the GXE loan was, in substance, a loan solely from GITIC and not from GXE. Mr. Wong testified that it was GITIC that negotiated the GXE loan with petitioner and that petitioner recorded the GXE loan as a loan from GITIC in its accounting records. However, petitioner's general ledger segregates and identifies interest payments made to GXE, and petitioner does not dispute that it paid interest directly to GXE on the GXE loan. In addition, petitioner's original 1994 Form 5472 and amended Forms 5472 for each of the years in issue reported that petitioner paid interest to GXE. Moreover, in the September 8, 1998, letter, petitioner admits that it had at least one GXE loan that was separate from the loan it had with GITIC. The GXE loan agreement lists GXE as the lender. Although the officer who signed the loan agreement on behalf of GXE was also an officer of GITIC, related companies frequently share officers and employees. See United States v. Bestfoods, 524 U.S. 51, 69 (1998) (acknowledging that it is not unusual for a parent corporation and its subsidiary to share directors and officers who can and do represent the two

corporations separately).  Finally, GXE submitted a Form W-8 to petitioner on the date the GXE loan agreement was signed.

There is no credible evidence in the record establishing that GITIC funded the GXE loan.[16]  If GITIC had been the lender, the parties easily could have prepared a loan agreement to reflect that fact.  The record does not demonstrate that petitioner consistently treated the GXE loan as a loan from GITIC.  In fact, petitioner's tax reporting, its general ledger, and its loan agreements establish the contrary.  We conclude therefore that petitioner has failed to prove that the loan it obtained from GXE was, in substance, a loan from GITIC.

### 2.   GXE as an Agent of GITIC

Petitioner argues that GXE acted as GITIC's agent in making the GXE loan and, as such, collected interest on the loan for the benefit of GITIC.

Where a genuine agency relationship exists, the tax consequences of transactions involving property held by an agent may be attributed to the principal.  Commissioner v. Bollinger, 485 U.S. 340, 349 (1988).  An agency relationship, however, does not automatically result from the fact that a parent corporation owns and controls its subsidiary.  Id. at 346; Natl. Carbide

---

[16]Although GITIC presumably capitalized GXE at its inception in 1985, GXE lent the money in question to petitioner at least 5 years later.  There is nothing in the record that indicates GITIC contributed cash to GXE to enable GXE to make the loan to petitioner.

Corp. v. Commissioner, 336 U.S. 422, 437 (1949).  In Natl.
Carbide Corp., the Supreme Court held that a parent-subsidiary
relationship does not qualify as an agency relationship unless
the subsidiary corporation's relationship with its parent
corporation is not dependent on the parent corporation's
ownership of the subsidiary (the ownership requirement) and the
subsidiary's business purpose is "carrying on * * * the normal
duties of an agent."  Natl. Carbide Corp. v. Commissioner, supra
at 437.  The Supreme Court further held that, if these two
criteria are satisfied, a subsidiary will qualify as an agent of
its parent corporation if (1) the subsidiary acts in the name of
and for its parent corporation, (2) the subsidiary binds its
parent corporation by its actions, (3) the subsidiary transfers
its receipts to its parent corporation, and (4) the income
received by the subsidiary is attributable to the services of its
parent corporation's employees and assets.  Id.

In Bollinger, the Supreme Court revisited the factors
identified and discussed in Natl. Carbide Corp. in deciding
whether a corporate nominee was the agent of several real estate
development partnerships.  There the Supreme Court "[declined] to
parse the text of National Carbide" and agreed "that it is
reasonable for the Commissioner to demand unequivocal evidence of
genuineness in the corporation-shareholder context".
Commissioner v. Bollinger, supra at 349.  The Supreme Court

concluded that there was unequivocal evidence that the corporation was an agent of the partnerships without rigidly applying the Natl. Carbide Corp. factors, explaining its holding as follows:

> It seems to us that the genuineness of the agency relationship is adequately assured, and tax-avoiding manipulation adequately avoided, when the fact that the corporation is acting as agent for its shareholders with respect to a particular asset is set forth in a written agreement at the time the asset is acquired, the corporation functions as agent and not principal with respect to the asset for all purposes, and the corporation is held out as the agent and not principal in all dealings with third parties relating to the asset. * * *

Id. at 349-350.

Petitioner argues that GXE was an agent of GITIC with respect to the GXE loan under the standard articulated in Natl. Carbide Corp. and clarified in Bollinger because a GITIC brochure describes GXE as GITIC's agent and states that GXE's business purpose is to "act as an agent for GITIC". Petitioner, however, offered no credible evidence to establish an agency relationship between GITIC and GXE with respect to the GXE loan. For example, petitioner provided no evidence that (1) GXE acted in the name of or for GITIC in making the loan, (2) GXE could bind GITIC by GXE's actions, (3) the income received by GXE was transferred to GITIC, or (4) GXE's income was attributable to GITIC's employees and assets. Credible evidence in the record establishes GXE was, among other things, in the business of investing in domestic and

foreign enterprises. It was not a shell corporation that functioned solely as GITIC's agent. GXE hired employees, maintained office space, and operated in a different market than its parent company. The GXE loan fits squarely within GXE's scope of business. In addition, the GXE loan agreement reflects that GXE, not GITIC, was the lending party, and the loan agreement does not contain any reference to GITIC. The loan agreement was signed by a director of GXE and does not contain any indication that GXE entered into the loan agreement as an agent of GITIC.

Petitioner argues that GITIC was bound by the GXE loan agreement because GITIC guaranteed GXE's debt. Petitioner bases its argument on language in an offering circular dated November 16, 1993, which states that GITIC provided a $15 million working capital guaranty to GXE. The record, however, is devoid of any credible evidence that GITIC guaranteed GXE's loan to petitioner. The loan agreement between petitioner and GXE is silent regarding any guaranty made by GITIC, and the September 8, 1998, letter states that the GXE loan was not guaranteed.

Petitioner argues that GITIC controlled the destination of the GXE loan interest payments and that the interest received by GXE was attributable to the services of GITIC's employees by means of shared officers, directors, and office space. These arguments are unavailing. There is no credible evidence in the

record to indicate that GITIC controlled anything about the GXE loan. In addition, although the sharing of employees can indicate an agency relationship, companies frequently share employees. See United States v. Bestfoods, 524 U.S. at 69 (citing Lusk v. Foxmeyer Health Corp., 129 F.3d 773, 779 (5th Cir. 1997)). Although GITIC and GXE shared the GITIC office building in Hong Kong, the employees of each company were segregated.

We conclude that petitioner has failed to prove that GXE was an agent of GITIC with respect to the GXE loan to petitioner. We hold that the interest paid to GXE as found in this opinion was properly subject to withholding tax for the years in issue.

III. Addition to Tax

Section 6651(a)(1) imposes an addition to tax for failure to file a tax return, in the amount of 5 percent of the tax liability required to be shown on the return for each month during which such failure continues, but not exceeding 25 percent in the aggregate, unless it is shown that such failure is due to reasonable cause and not due to willful neglect. See United States v. Boyle, 469 U.S. 241, 245 (1985); Denenburg v. United States, 920 F.2d 301, 303 (5th Cir. 1991); Harris v. Commissioner, T.C. Memo. 1998-332.

Petitioner admits, and the record clearly establishes, that petitioner failed to file Forms 1042 for the years in issue.

See secs. 6651(a)(1), 6001; <u>Ellwest Stereo Theatres of Memphis,
Inc. v. Commissioner</u>, T.C. Memo. 1995-610; sec. 1.1461-2, Income
Tax Regs.  Consequently, petitioner is obligated to prove that
the failure to file Forms 1042 was due to reasonable cause and
not due to willful neglect.  See <u>Higbee v. Commissioner</u>, 116 T.C.
438, 447 (2001).

A failure to file is due to reasonable cause where a
taxpayer "exercised ordinary business care and prudence and was
nevertheless unable to file the return within the prescribed
time".  Sec. 301.6651-1(c)(1), Proced. & Admin. Regs.  Although
courts have sometimes found reasonable cause in determining the
amount of a taxpayer's liability for the addition to tax where a
taxpayer relies upon expert advice, a taxpayer ordinarily is
responsible for ascertaining tax obligations such as filing
deadlines.  <u>United States v. Boyle</u>, <u>supra</u> at 251.  Lay persons
know that filing deadlines exist, and "reliance cannot function
as a substitute for compliance with an unambiguous statute."  <u>Id.</u>
However, where a taxpayer reasonably relied on the advice of a
competent accountant or attorney in possession of all relevant
facts that it was unnecessary to file a return, reasonable cause
may exist, even if the advice turns out to be mistaken.  <u>Id.</u> at
250.

Petitioner does not contend that it was unaware that a
withholding liability might exist as a result of making interest

payments to a foreign corporation.  Petitioner also does not contend that it relied on the informed advice of a competent professional that it did not have to file Forms 1042 and 1042S for the years in issue.  Petitioner argues that the interest paid to GITIC and GXE during the years in issue was exempt and that it relied on the advice of Mr. Wong and other professionals to that effect.

We reject petitioner's argument for several reasons.  First, it does not appear that the professionals who allegedly advised petitioner did anything to ascertain whether petitioner was required to file Forms 1042 and 1042S before petitioner filed its original returns for the years in issue.  There is no credible evidence in the record establishing that a competent professional investigated petitioner's obligation to file Forms 1042 and 1042S before the filing due date for the years in issue or that a competent professional advised petitioner that it did not have to file the forms.  This lack of evidence contrasts sharply with applicable regulations that clearly and unambiguously require a withholding agent to file Form 1042 for a calendar year, even if otherwise taxable payments are exempt, if the agent is required to file Form 1042S with respect to interest payments made during such year.  Secs. 1.1461-2(b)(1), (c)(1)(ii), Income Tax Regs.[17]

---

[17]Sec. 1.1461-2(b)(1), Income Tax Regs., requires a withholding agent to make an annual return on Form 1042 even if
(continued...)

Second, the only evidence petitioner offered regarding the section 6651(a)(1) addition to tax focused on advice allegedly given to petitioner about its obligation to withhold U.S. tax on the interest payments. Petitioner contends that it relied upon professional advice, both from Mr. Wong and from other professionals with whom Mr. Wong spoke, to determine whether the China Agreement exempted its interest payments. However, the only evidence petitioner introduced to support its argument was testimony by Mr. Wong that he read the China Agreement and consulted with unnamed experts regarding the obligation to withhold tax on interest payments to GXE. This evidence is not sufficient to establish that petitioner reasonably relied on professional advice from a person who had full knowledge of the relevant facts and who conducted the necessary investigation to reach a reasoned conclusion regarding petitioner's obligation to file Forms 1042.

We conclude on the record before us that petitioner has failed to establish reasonable cause for its failure to file

---

[17](...continued)
no withholding tax is required to be withheld if the withholding agent is required by sec. 1.1461-2(c)(1), Income Tax Regs., to file Form 1042S with respect to payments made during the year. Sec. 1.1461-2(c)(1)(ii), Income Tax Regs., requires every withholding agent to make an annual information return on Form 1042S of "Amounts upon which tax would have been required to be withheld * * * but for an exclusion from gross income applicable under any income tax treaty to which the United States is a party".

Forms 1042 and 1042S for the years in issue.  Accordingly, we sustain respondent's determination that petitioner is liable for the section 6651(a)(1) addition to tax for each of the years in issue, to the extent consistent with this opinion.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.